STATE of Iowa, Appellee,

v.

Charles O. REESE, Appellant.

No. 62479.

Supreme Court of Iowa.

Feb. 18, 1981.

Rehearing Denied March 13, 1981.

John W. Logan, Council Bluffs, for appellant.

Thomas J. Miller, Atty. Gen., John P. Messina, Asst. Atty. Gen., and David Richter, Pottawattamie County Atty., for appellee.

Considered by LeGRAND, P. J., and UHLENHOPP, HARRIS, McCORMICK, and ALLBEE, JJ.

McCORMICK, Justice.

We reversed the previous first-degree murder conviction of defendant Charles O. Reese because of the trial court's refusal to instruct the jury on the lesser included offense of second-degree murder. *See State v. Reese*, 259 N.W.2d 771 (Iowa 1977). This is an appeal from his conviction and sentence for first-degree murder after retrial. In seeking reversal, defendant contends the trial court erred in overruling his objection to evidence of oral statements he allegedly made to a police officer, in refusing to direct a verdict in his favor or grant a new trial because of the insufficiency of evidence to corroborate the testimony of an alleged accomplice, and in rejecting his re-

quested instruction concerning the credibility of the immunized accomplice's testimony. We find no merit in defendant's contentions and therefore affirm the trial court.

The charge is based on the alleged murder of Charles Sallis, whose body was found on January 18, 1976, in a culvert under Interstate 80 near Neola in Pottawattamie County. The evidence showed Sallis died of a shotgun wound to the head. The State alleged the offense was committed by Jerry Hildreth, Isaiah Jones and defendant as a result of an offer by the victim's wife Kathy to compensate anyone who killed her husband. Hildreth was convicted and sentenced for first-degree murder upon his plea of guilty. Kathy Sallis was convicted and sentenced for first-degree murder after jury trial. *See State v. Sallis*, 262 N.W.2d 240 (Iowa 1978). Jones was granted immunity. The State relied in part on Jones' testimony in each of defendant's trials. Jones' version of the offense is recited in our prior opinion and will not be repeated here. *See* 259 N.W.2d at 773.

■ I. *Defendant's oral statements.* Defendant contends the trial court erred in overruling his objection to testimony detailing his alleged oral statements to Omaha police detective Jack O'Donnell at the police station after his January 20, 1976, arrest. These statements concerned defendant's activities on the night of the alleged murder and were consistent with his later alibi defense. In his objection at trial, defendant contended the statements had been suppressed by a pretrial suppression order and, in any event, were the product of an unlawful arrest. In overruling the objection and a subsequent motion for mistrial, the trial court found the objection was untimely and also held the evidence did not prejudice the defendant because it was noninculpatory. We believe the court was right on both grounds.

Even though a motion to suppress evidence had been filed and ruled on prior to the first trial, the trial court permitted motions to be renewed before the second trial. The motions to suppress evidence seized in a search of two automobiles and Jones' house were substantially the same in each instance. Neither motion mentioned defendant's arrest or challenged its legality. The body of each motion was devoted to attacking the basis for the searches. The motions did request suppression of "any statements alleged to have been made" by defendant.

Defendant's first motion was sustained as to evidence seized from one of the automobiles but was otherwise overruled. His renewed motion was submitted in a hearing before the second trial. The transcript discloses no evidence concerning defendant's arrest and no challenge to its legality. Neither the arrest nor any subsequent statements were discussed. In its ruling, the trial court suppressed the evidence from all three searches as well as "any statements or evidence with reference thereto." No mention was made of the arrest or any other statements. The suppression order did not adjudicate either the legality of the arrest or the admissibility of evidence of defendant's alleged post-arrest statements concerning his activities on the night of the alleged offense. Those issues were not addressed in the motion, hearing or order.

The second trial was held several months after the trial court had fixed a deadline for filing all motions. Two continuances had been granted at defendant's request. Many weeks had passed since the court had ruled it would entertain new motions only if justice required. Defendant had expressly requested and obtained an order of the court making the January 1, 1978, rules of criminal procedure applicable to the case in accordance with section 801.5(2)(b)(1), The Code.

Under Iowa R.Crim.P. 10(4) (1978), motions to suppress, except those under rule 11, were to be filed "either within thirty days after arraignment or prior to the impaneling of the trial jury, whichever event occurs earlier, unless the period for filing is extended by the court for good cause shown." At the time material here, rule 11 required motions to suppress evidence obtained through search and seizure to be made before trial "unless opportunity did not exist or the defendant was unaware of

the factual grounds of the motion...." The court had discretion to entertain such motion at trial "upon good cause supported by affidavit." These rules are discussed in *State v. McCowen*, 297 N.W.2d 226, 227–28 (Iowa 1980).

Defendant's objection at trial to the admissibility of evidence of his alleged post-arrest statements was untimely under the court's order fixing a deadline for motions and under the rules. Defendant did not proffer any excuse for the delay, and no basis appears for finding he was previously unaware of the factual ground of his objection.

Moreover, the statements were consistent with defendant's alibi defense at trial. Although he testified to additional material details not included in the oral statements, he defended their accuracy. He admitted making the statements to the police, denying only that O'Donnell was the officer to whom he made them. We agree with the trial court that O'Donnell's testimony concerning the statements was not inculpatory. It had no probative force except for its possible use to impeach defendant's testimony at trial. Because O'Donnell's testimony could be reconciled with defendant's testimony and defendant asserted only that he made the statements to another officer, the evidence had little value even as impeachment.

To the extent that the jury might draw any adverse inference from that evidence when compared with defendant's trial testimony, we hold that any error in admitting O'Donnell's testimony was harmless beyond a reasonable doubt under the standard delineated in *Chapman v. California*, 386 U.S. 18, 23–24, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705, 711 (1967); *see State v. Lanphear*, 220 N.W.2d 618, 622 (Iowa 1974).

We will not reverse on the basis of this assignment.

■ II. *Sufficiency of corroboration.* Defendant's alleged accomplice Isaiah Jones was one of the State's principal witnesses. Iowa R.Crim.P. 20(3) prohibits a conviction upon the testimony of an accomplice unless it is "corroborated by other evidence which shall tend to connect the defendant with the commission of the offense...." Corroboration is insufficient if it merely shows the commission of the offense or its circumstances. *See State v. Graham*, 291 N.W.2d 345, 350 (Iowa 1980). Defendant contends Jones' testimony was not sufficiently corroborated in this case. He unsuccessfully moved for directed verdict and new trial on that ground.

■ We find ample corroboration of Jones' testimony. The record includes testimony of a witness who was in the Omaha jail with defendant after the killing. He testified defendant told him of his participation in the offense. The details which the witness related confirmed many of the particulars in Jones' testimony. Another witness testified how she arranged before the slaying for the victim to be in a place where defendant, Hildreth and Jones could seize him. Her testimony confirmed that of Jones in this and other respects. This evidence meets the standard for sufficiency of corroboration delineated in our cases. *See State v. Cuevas*, 282 N.W.2d 74, 78 (Iowa 1979); *State v. Cuevas*, 281 N.W.2d 627, 629–31 (Iowa 1979).

The trial court did not err in overruling the motions alleging Jones' testimony was not sufficiently corroborated.

■ III. *The immunized witness instruction.* Defendant contends the trial court erred in refusing to give his requested instruction relating to Jones' credibility as an immunized witness. His requested instruction was as follows:

A witness for the State is shown to have been granted immunity from prosecution for the crime with which defendant is charged, in consideration of him giving testimony where ... he admits that he was an accomplice to the alleged crime. In considering the testimony of a witness who testifies under a grant or promise of immunity, the jury must consider that there is a strong and compelling motive for the witness to color and fabricate his testimony, and such consideration must be weighed and such testimony must be

weighed with great care and circumspection.

The court's instruction contained the same first sentence but a different second sentence. The court's second sentence was: "Now in considering the testimony of said witness it is proper for you to consider such fact together with all other facts and circumstances disclosed by the evidence in determining what weight and credibility, if any, you give to the testimony of said witness."

The court instructed the jury on the necessity of corroboration of Jones' testimony as provided in II Iowa State Bar Association, *Iowa Uniform Jury Instructions (Criminal)* No. 201. The court also gave the uniform instruction on credibility of witnesses. *See id.* No. 105.

We have not previously been required to decide whether it is reversible error to refuse to give a requested instruction advising the jury to exercise great caution in weighing the evidence of a witness who has testified under immunity. Such a cautionary instruction is common in federal prosecutions. *See, e. g., United States v. Hastings,* 577 F.2d 38, 42 (8th Cir. 1978); *United States v. De Loach,* 530 F.2d 990, 994 n.5 (D.C. Cir. 1975), *cert. denied,* 426 U.S. 909, 96 S.Ct. 2232, 48 L.Ed.2d 834 (1976); 1 E. Devitt & C. Blackmar, *Federal Jury Practice and Instructions* § 17.04 at 529–30 (3d ed. 1977). Convictions have been reversed for failure to give the instruction. *See, e. g., United States v. Leonard,* 494 F.2d 955, 960 (D.C. Cir. 1974); *United States v. Wasko,* 473 F.2d 1282, 1284 (7th Cir. 1973); *McMillen v. United States,* 386 F.2d 29, 36 (1st Cir. 1967), *cert. denied,* 390 U.S. 1031, 88 S.Ct. 1424, 20 L.Ed.2d 288 (1968). However, reversible error has not been found when the standard federal instruction on accomplice testimony has been given instead. The federal accomplice instruction contains cautionary language. *See, e. g., United States v. Watson,* 623 F.2d 1198, 1205 (7th Cir. 1980); *United States v. Rucker,* 586 F.2d 899, 904 (2d Cir. 1978); *United States v. Morgan,* 555 F.2d 238, 243 (9th Cir.

1977); *United States v. Sarvis,* 173 U.S. App.D.C. 228, 523 F.2d 1177, 1180–81 (D.C. Cir. 1975); *United States v. Curry,* 512 F.2d 1299, 1303 (4th Cir.), *cert. denied,* 423 U.S. 832, 96 S.Ct. 55, 46 L.Ed.2d 50 (1975).

The federal practice is based in part on the fact that in federal prosecutions a defendant may be convicted on the uncorroborated testimony of an accomplice. Another factor is the authority of federal judges to sum up and comment on evidence adduced at trial. *United States ex rel. Swimley v. Nesbitt,* 608 F.2d 1130, 1134 (7th Cir. 1979). In contrast, a conviction on the uncorroborated testimony of an accomplice is barred in Iowa, and commenting on evidence is prohibited. We have been content to leave the issue of credibility of an accomplice to cross-examination and jury argument.

Moreover, this court has disapproved instructions which "single out any witness and burden his testimony with any suggestion which might indicate to the jury that the court believed the witness was likely to testify falsely." *State v. Feddersen,* 230 N.W.2d 510, 515 (Iowa 1975) (disapproving Lord Hale instruction); *see State v. Bester,* 167 N.W.2d 705 (Iowa 1969) (disapproving specific instruction relating to the defendant's credibility); *State v. Asbury,* 172 Iowa 606, 614, 154 N.W. 915, 918 (1915) ("This court has held, as have many others, very many times, that though an instruction upon the weight and credibility to be given to testimony was abstractly correct, it was yet error to single out some one witness or some party for its application."). *See also State v. Wright,* 274 N.W.2d 307, 314 (Iowa 1979); *State v. Hall,* 235 N.W.2d 702, 725 (Iowa 1975); *State v. Milliken,* 204 N.W.2d 594, 596–97 (Iowa 1973).

■ The interest of an accomplice who has been granted immunity is a matter of common sense and common knowledge. The issue of the witness' credibility may be fully explored on cross-examination and jury argument. It is not reversible error in this jurisdiction to refuse an instruction which would advise the jury to scrutinize the testimony of an immunized witness with greater care than the testimony of an

ordinary witness. As the court said in *Swimley*, 608 F.2d at 1134: "Members of a jury do not leave their common sense behind them when they enter the jury room. It would seem that the jury would ordinarily be cognizant of such factors bearing on credibility with or without special cautionary instructions." We do not think modern juries need to be spoon-fed on credibility issues.

The trial court did not err in refusing to give defendant's requested instruction. The court's instruction on the immunity issue was sufficient.

No reversible error has been shown. Defendant's conviction must stand.

AFFIRMED.