**Charles O. REESE, Appellee,**

v.

**Crispus C. NIX, Appellant.**

**No. 90–3051.**

United States Court of Appeals,
Eighth Circuit.

Submitted June 11, 1991.

Decided Aug. 22, 1991.

Thomas McGrane, Asst. Atty. Gen., Des Moines, Iowa, for appellant.

James Cleary, Phoenix, Ariz., for appellee.

Before ARNOLD and MAGILL, Circuit Judges, and BATTEY,* District Judge.

MAGILL, Circuit Judge.

Crispus Nix, the warden of the Iowa State Penitentiary, appeals the district court's grant of habeas relief to Charles O. Reese. The district court held that the state court violated Reese's constitutional right to self-representation, and as a result he was entitled to relief. Nix argues that the district court erred when it refused to credit the state appellate court finding that Reese did not truly request self-representation. We agree and reverse the district court's grant of habeas relief.

## I.

Reese was convicted of first degree murder in 1976. The Iowa Supreme Court reversed this conviction and remanded for retrial in 1977 because the trial court had failed to instruct the jury on the lesser included offense of second degree murder. *State v. Reese*, 259 N.W.2d 771, 777–79 (Iowa 1977). During this successful appeal, Reese was represented by F.J. Kraschel, a court-appointed criminal law attorney. Kraschel also served as Reese's attorney for his second trial, which was held in August 1978. Before his second trial, Reese expressed dissatisfaction with Kraschel's representation and requested new counsel. On July 10, 1978, the trial court held a hearing to consider Reese's request.

---

* THE HONORABLE RICHARD H. BATTEY, United States District Judge for the District of South Dakota, sitting by designation.

The following colloquy took place at this hearing:

THE COURT: I believe you requested this hearing, Mr. Reese.

THE DEFENDANT: Yes.

THE COURT: What is the purpose?

MR. REESE: To get another attorney assigned to me, John Logan.

THE COURT: Do you have any particular reason for having another attorney?

THE DEFENDANT: Because Mr. Kraschel's office is kind of busy, you know. He's pretty busy, and he can't devote the time to me—my case, you know, that I think should be devoted to it.

THE COURT: Anything further?

THE DEFENDANT: Well, you know, I got a lot on my mind, you know, if that's what you want, if you want me to tell you what's on my mind.

It's gotten to the point where, you know, I don't feel I could trust him anymore. You know, I don't feel like—that he's sure that I am innocent basically, you know, and this must be hindering him somewhat, you know, performing— like, you know—like doing things like they should be done.

. . . .

THE COURT: Well, Mr. Reese, I think we're in a situation here where a few things probably should be understood. First of all, when an attorney is appointed that does not mean that you are entitled to his full services eight to twelve hours a day from the minute he is appointed until trial commences. What you are entitled to and what you constitutionally have a right to is adequate, competent, experienced trial attorney. I don't believe there's any question but what Mr. Kraschel is that in this case.

. . . .

... Mr. Kraschel is one of the most meticulous people I know. He had brought up every point almost to the point of exhaustion in this case. I don't believe he's left a stone unturned. Not only that, in this particular case he obtained a new trial for you on an unprecedented point of law in the State of Iowa.

I'm sure you're aware of that. You're here because of Mr. Kraschel's work, as I understand the situation, in appeals court; is that not correct?

THE DEFENDANT: Yes.

THE COURT: ...

But [Mr. Kraschel] does know this case, and the Court is well aware of his competence. He has represented and been involved in probably more capital offense cases than any other attorney to my knowledge who is currently practicing in Council Bluffs, Iowa.

You are entitled to representation at trial by a good, competent attorney. That is what Mr. Kraschel is. In this particular case you not only have the advantage of Mr. Kraschel, you also have the advantage of Mr. Wheeler who is also an extremely meticulous, competent attorney, and I just don't really honestly know who I could appoint to replace either one of them or both of them who could do a better job for you.

THE DEFENDANT: I have somebody in mind.

THE COURT: You may have, but it's up to the Court to make the appointment, and I believe the law is such that you are entitled to a good, competent attorney and that attorney is not necessarily one of your own choice. And particularly when we get down to shortly before trial when the case is getting fairly well prepared, I think it becomes more discretionary with the Court whether or not the Court will allow you to change counsel.

Now, if you wish to go out and hire counsel, you, of course, are free to do this at any time, but as far as this court-appointed attorney, my only decision, if you want to call it that, is whether or not he's competent and qualified, and he is very competent, and he is very qualified, and so far he has done an enormous amount of time on the case, more than the average attorney would ever do, and has done a good job for you.

And for that reason at this time I'm going to reject your application that you change counsel. In fact, as a matter of fact, even I think if Mr. Kraschel asked

to be relieved I would not allow him to do so. That's how strongly I feel that you need his representation in this case.

So Mr. Kraschel—so there's no question about it, Mr. Kraschel and Mr. Wheeler will continue to serve as co-counsel. I'm not designating and have not designated either one the senior counsel since they are both equally qualified and equally competent.

THE DEFENDANT: Well, I don't want no counsel then.

THE COURT: Pardon?

THE DEFENDANT: Well, I don't want no counsel then.

THE COURT: You're going to have counsel, and these are the two you're going to have. Now, whether you want to consult with them or not, that is up to you. If you choose to sit here and not consult with them, fine, but they are going to be in the courtroom when this case is tried because I'm not going to try the case without adequate counsel present. They are going to be here or in Audubon or wherever the case is tried. So that we understand each other—

THE DEFENDANT: Your Honor, you know, like—

THE COURT: So we understand each other a little further, we are in an area where it's up to the Court to appoint the counsel. It's not up to you to pick and choose what attorneys you have, and these are your attorneys, and these are going to be your attorneys for the completion of this trial which will commence on August 8. There is no way that any other attorney in one or two or three, four months' time could acquire all the knowledge that either Mr. Kraschel or Mr. Wheeler has acquired.

THE DEFENDANT: You know, I realize that, your Honor.

THE COURT: I'm telling you not only because this is the law. This is my own personal belief that these two men know this case and have lived this case for several years now—for over a year, and I have been through the file. I'm as familiar with the case—probably more familiar than any other judge or anyone

else outside of maybe the immediate attorneys involved, and I know what they have done, and I know what's involved, and you have a complicated case, and they have done a good job on it. I can't fault them for any work they have done.

THE DEFENDANT: I ain't saying they didn't do a good job.

THE COURT: Your complaint then I take it comes down to the fact that they have not been at your beck and call each time you wanted them; is that correct? Do you think—

THE DEFENDANT: That's a pretty cruel way to put it.

THE COURT: Pardon?

THE DEFENDANT: That's not the way that you should put it. That is a pretty cruel—

THE COURT: But that's what it comes down to, isn't it, when we get down to the bottom line?

THE DEFENDANT: The way you want to look at it.

THE COURT: Isn't that about it?

THE DEFENDANT: The way you are looking at it, the way you want to look at it, not the way I'm looking at it, not the way I'm sure they look at it.

THE COURT: That's the way I'm looking at it. They will continue to be your counsel. They are competent. They are qualified. You don't even deny that.

THE DEFENDANT: Of course I can't deny that. I ain't gonna lie.

THE COURT: So they will continue to serve as your counsel.

Tr. at 87–88, 97–103. Trial commenced on August 8 with Kraschel as Reese's counsel. The jury found Reese guilty of first degree murder. This time, the Iowa Supreme Court affirmed the conviction. *State v. Reese*, 301 N.W.2d 693 (Iowa 1981). In a postconviction proceeding, Reese claimed that the trial court violated his right to self-representation when it ignored his statement, "Well, I don't want no counsel then." Tr. at 100. The Iowa Court of Appeals rejected this claim, concluding that Reese's statement was not an assertion of his right to self-representation, but rather

an expression of frustration over the trial court's decision to deny his request for new counsel. *Reese v. State,* 391 N.W.2d 719, 724 (Iowa App.1986). After exhausting his state court remedies, Reese petitioned for a writ of habeas corpus in federal district court. The district court granted relief on the ground that the trial court improperly ignored Reese's request to represent himself, thereby violating Reese's right to proceed pro se.

## II.

Nix first argues that Reese defaulted on his claim of self-representation because he failed to raise the issue on direct appeal. Nix also argues the district court erred in granting habeas relief because its decision ignored the state court's finding that Reese's statement was an expression of frustration and not a true request for self-representation. Reese argues that Nix waived the procedural default defense because he failed to include the defense in his answer to Reese's petition for habeas relief. Reese also argues that the district court was not required to adopt the conclusion of the state court on the self-representation issue because the state court's conclusion was based on the application of law to facts, not just on historical facts.

■ As a threshold matter, we reject Nix' first argument that Reese was procedurally barred from raising the self-representation issue in his federal habeas petition. The district court properly held that Nix waived his procedural default defense by failing to affirmatively assert it in his answer to Reese's petition for habeas relief. Therefore, we proceed to Nix' second argument.

■ The primary question in this case is whether the trial court violated Reese's right to self-representation. In *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the Supreme Court held that a state court violated a criminal defendant's constitutional right to self-representation when it forced the defendant to accept a state-appointed attorney after the defendant "clearly and unequivocally" declared that he wanted to represent himself.

*Id.* at 835–36, 95 S.Ct. at 2541. The Court stated that since a defendant waives his constitutional right to counsel when he exercises his right to self-representation, a defendant must "knowingly and intelligently" choose self-representation. *Id.* at 835, 95 S.Ct. at 2541. To assure such a choice, the Court stated that a defendant should "be made aware of the dangers and disadvantages of self-representation so that the record will establish 'he knows what he is doing and his choice is made with eyes open.'" *Id.* (citation omitted). The Court concluded that a violation of the right to self-representation requires reversal of the conviction. *Id.* at 836, 95 S.Ct. at 2541; *see also McKaskle v. Wiggins,* 465 U.S. 168, 177 n. 8, 104 S.Ct. 944, 950 n. 8, 79 L.Ed.2d 122 (1984) (denial of right to self-representation not subject to harmless error analysis).

Appellate courts have required more than an equivocal request for self-representation before they engage in a full-blown *Faretta* inquiry. *See Marshall v. Dugger,* 925 F.2d 374 (11th Cir.1991); *United States v. Treff,* 924 F.2d 975, 978–79 (10th Cir. 1991); *Jackson v. Ylst,* 921 F.2d 882, 888–89 (9th Cir.1990). The tension created by the mutual exclusivity of the right to counsel and the right to self-representation places a trial court in a precarious position. If it grants a request for self-representation, the defendant can argue on appeal that she did not knowingly and intelligently waive her right to counsel. On the other hand, if a trial court denies a request for self-representation, the defendant can argue on appeal that she was denied her *Faretta* right. Since the Eighth Circuit has not addressed this issue, we look to other circuits for guidance.

Both the Ninth and Tenth Circuits require that a defendant make an "unequivocal" demand for self-representation before invoking her *Faretta* right. *See Jackson,* 921 F.2d at 888–89; *Treff,* 924 F.2d at 978–79. In *Jackson,* the defendant requested substitute counsel in a motion for a new trial. After the trial court denied his request for new counsel, the defendant stated:

Hey, I don't see why [the motion for substitute counsel] isn't granted. I'm doing the filing of the motion [for a new trial]. What good is [appointed trial counsel] doing for me now? I want to fight pro per [sic] then. Relieve him and I do this myself.

*Id.* at 888–89. The trial court did not grant this request. On appeal, the defendant claimed that the trial court had violated his right to self-representation. The Ninth Circuit concluded that: "the record demonstrates that Jackson's request for self-representation was an impulsive response to the trial court's denial of his request for substitute counsel." *Id.* at 888. The *Jackson* court also noted that the defendant did not object to the presence of counsel at any later date, nor did he renew his request to proceed pro se. *Id.* at 889. Similarly, Reese's statement, "Well, I don't want no counsel then," came only after his motion for substitute counsel was denied. Just as in *Jackson,* Reese's response seems to be an impulsive response to the trial court's denial of his request for new counsel. Furthermore, Reese never renewed his request or his objection to Kraschel's performance. The ambiguity created by the context of Reese's statement makes it impossible for us to conclude that he clearly and unequivocally invoked his right to self-representation. Therefore, applying the Ninth Circuit test, we conclude that since Reese's *Faretta* right was never invoked, it was never improperly denied.

The Eleventh Circuit uses a reasonable person test to determine whether a criminal defendant has clearly and unequivocally invoked his right to self-representation. Under this approach a criminal defendant must "do no more than state his request [to proceed pro se], either orally or in writing, *unambiguously to the court so that no reasonable person can say the request was not made." Dorman v. Wainwright,* 798 F.2d 1358, 1366 (11th Cir.1986) (citation omitted) (emphasis added), *quoted in Stano v. Dugger,* 921 F.2d 1125, 1143 (11th Cir.1991) (en banc). In *Marshall,* the Eleventh Circuit reiterated that a request to proceed pro se invokes the right to self-representation only when a reasonable person would find that the request was a clear and unequivocal invocation of the right to self-representation. *Marshall,* 925 F.2d at 374. Applying this reasonable person standard to Reese's statement, we conclude that Reese did not clearly and unequivocally invoke his right to self-representation. Reese stated, "Well, I don't want no counsel then" after the trial court denied his motion for substitute counsel. Given the context of the entire colloquy between Reese and the trial court, a reasonable person could have concluded that Reese was merely expressing his frustration and not clearly invoking his right to self-representation. Furthermore, the state appellate court reviewed Reese's claim and rejected his argument that this isolated, off-hand statement constituted an invocation of his right to self-representation. *See Reese v. State,* 391 N.W.2d 719, 724 (Iowa App.1986).

Reese argues that the trial court's response to Reese's statement indicates that the trial court knew that he was invoking his right to self-representation. The trial court stated:

You're going to have counsel, and these are the two you're going to have. Now, whether you want to consult with them or not, that is up to you. If you choose to sit here and not consult with them, fine, but they are going to be in the courtroom when this case is tried....

. . . .

THE COURT: So we understand each other a little further, we are in an area where it's up to the Court to appoint the counsel. It's not up to you to pick and choose what attorneys you have....

Tr. at 101. While the trial court's statement, "You're going to have counsel," does seem to indicate a situation of forced representation, the context of this statement reveals that the trial court considered the issue to be who should represent Reese. The trial court explicitly told Reese that he could ignore his counsel, but that the trial court was going to insist that counsel be present during the trial. Reese's appointed attorneys would then be acting as standby counsel, which does not violate a defen-

dant's right to self-representation. *See McKaskle*, 465 U.S. at 184, 104 S.Ct. at 954; *United States v. Heine*, 920 F.2d 552, 554 (8th Cir.1990).

In its order granting Reese's habeas petition, the district court stated that Reese made the request to proceed pro se twice, but on only that one occasion. It reasoned that Reese's failure to make repeated requests did not invalidate his request because "once 'the trial court has unmistakably indicated its intention not to recognize the claimed right [to proceed pro se] ... [the defendant's] subsequent apparent acquiescence can only in fairness be taken as a concession of his inability successfully to act on the right asserted.' " *Reese v. Nix*, No. 86–636A, slip op. at 12 (S.D.Iowa Oct. 18, 1990) (citation omitted). We disagree with the district court. First, as we have already shown, the trial court did not unmistakably indicate that it would not allow Reese to proceed pro se. It merely stated that it would not appoint new counsel and that appointed counsel would be in the courtroom during the trial. Second, Reese did not make two requests for self-representation. After Reese stated, "Well, I don't want no counsel then," the trial court responded, "Pardon?" A plain reading of this response leads us to conclude that the trial court did not hear Reese's statement. Apparently Reese arrived at the same conclusion, since he responded by repeating his statement. Under these circumstances, repeating a statement does not constitute a separate request.

Since Reese did not clearly and unequivocally invoke his right to self-representation, the trial court did not err when it failed to allow him to proceed pro se.

### III.

For the foregoing reasons, we reverse the district court's grant of habeas relief.

ARNOLD, Circuit Judge, dissenting.

I respectfully dissent. I would affirm the judgment of the District Court for the reasons persuasively stated in that Court's opinion. In my view, petitioner made a clear, unequivocal, and unmistakable request to be allowed to proceed as his own lawyer. The trial court just as clearly, unequivocally, and unmistakably rejected his request. This was an error of constitutional magnitude. The finding of the Iowa Court of Appeals that no real request for self-representation was made lacks fair support in the record. If words mean anything, this must be the result in this case.