# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1849

_____

United States of America,

        Appellee,

v.

Augustus Quintrell Light,

        Appellant.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

Appeal from the United States
District Court for the
District of Minnesota.

_____

Submitted: December 14, 2004
Filed: May 9, 2005

_____

Before BYE, HANSEN, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Augustus Quintrell Light appeals his conviction for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) and 924(e). Light contends that there was insufficient evidence to support the jury's finding that he possessed the gun and that the district court[1] denied his right to self-representation.

---

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

In addition, Light raises for the first time on appeal the argument that his sentence, based on the application of the United States Sentencing Guidelines in a mandatory fashion, was unconstitutional. For the reasons discussed below, we affirm the conviction and sentence.

## I.    BACKGROUND

Just before 4:00 p.m. on a clear and sunny day, two Duluth, Minnesota police officers in a squad car made a traffic stop on a sport-utility vehicle going the wrong way on a one-way street. As the vehicle stopped, a passenger, later identified as Augustus Quintrell Light, jumped out of the vehicle and ran. Officer Davis observed that Light was holding his midsection as though he were cradling something. Officer Davis exited the squad car to pursue Light on foot, while Officer McCullough pursued in the squad car. At least one of the officers had Light in view during the entire pursuit.

The officers and various bystanders observed Light dropping items as he ran. As Light came around the front (northwest) corner of a building known as Winslow's, both officers observed Light drop something on the ground. Light then reversed direction, and Officer Davis ran around the back of the building to cut him off. As a result, Officer Davis did not immediately run past the dropped object.

Officer Davis caught up with Light on the other side of the street, pulled his gun and ordered Light to stop. Light did not submit. Officer Davis tackled Light, and Officer McCullough arrived to help subdue him. The officers testified that the pursuit lasted two or three minutes, and the struggle to subdue Light lasted one or two more minutes. After Light was subdued, the officers found marijuana, cash and other items under Light's body. Bystanders later helped police recover hundreds of dollars in cash discarded by Light during the pursuit.

As Light was being subdued, Officer Holton arrived on the scene. Officer Holton testified that after he had been there no longer than three or four minutes, a bystander handed him a handgun and loaded magazine. The bystander, Mark Cohen, had watched the pursuit from his apartment window overlooking the street. Cohen had observed Light stumble at the northwest corner of Winslow's and reverse direction. Cohen testified that he immediately went down to the street to collect money that Light had dropped. He discovered the gun at the northwest corner of Winslow's, where he had observed Light stumble and where the officers had observed Light drop something.

Light was indicted for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) and 924(e). Light stipulated to having been previously convicted of a felony offense. The jury returned a verdict of guilty. The district court, applying the Sentencing Guidelines in a mandatory fashion, sentenced Light to 235 months in prison and five years of supervised release. On appeal, Light contends that there was insufficient evidence to support the jury's finding that he possessed the gun and that the district court denied his right to self-representation. Light also raises for the first time on appeal the argument that he was sentenced unconstitutionally under mandatory Sentencing Guidelines.

## II.    DISCUSSION

### A.   Sufficiency of the Evidence

We review the sufficiency of the evidence to sustain a conviction de novo. *United States v. Fitz*, 317 F.3d 878, 881 (8th Cir. 2003). "We will uphold a jury verdict if substantial evidence supports it." *Id.* (quoting *United States v. Cruz*, 285 F.3d 692, 697 (8th Cir. 2002)). We view the evidence in the light most favorable to the verdict and accept as established all reasonable inferences supporting the verdict. *Id.*

Light contends that there was insufficient evidence for the jury to find that he possessed the gun. Although both officers observed Light drop something at the spot where the gun was recovered, neither officer was close enough to identify the object dropped. The bystander who recovered the gun at that spot did not observe Light drop anything at all but did see Light stumble there. The gun was tested for fingerprints, but no usable prints were found.

Despite the absence of a direct observation of Light possessing the gun, we conclude it was a reasonable inference that the unidentified object the officers saw Light drop at the northwest corner of Winslow's was the gun Cohen recovered there approximately three to eight minutes later. The facts here are almost identical to those in *United States v. Echols*, 144 F.3d 584 (8th Cir. 1998), in which a police officer pursued a suspect fleeing the scene of gunfire. The officer kept Echols in sight throughout the pursuit and observed him reaching for his waistband several times. Echols was apprehended and subdued in an alley. Police then recovered a gun from the alley where Echols was apprehended. No one claimed to have seen Echols actually drop a gun or to have kept an eye on the spot where the gun was found. Nevertheless, we held that this evidence was sufficient to support a conviction for being a felon in possession of a firearm. *Id.* at 585. The instant case differs from *Echols* only in the fact that an alert bystander recovered the gun before the police had a chance to complete the arrest and recover the gun themselves.

*Echols* relied in part on an earlier case, *United States v. Rankin*, 902 F.2d 1344 (8th Cir. 1990), in which two police officers observed the fleeing suspect bring his hands to the front of his waist, remove a dark object, and let it fall to the ground. While one officer chased Rankin, the other officer ran to the area where the dark object had been dropped and found a handgun. Rankin argued that there was insufficient evidence to support a conviction for being a felon in possession of a firearm because no one witnessed him actually possessing or discarding the gun. We disagreed, holding that the immediate recovery of the gun from the spot where Rankin

was observed dropping an object was sufficient to support the conviction. *Id.* at 1345-46. Again, the instant case differs from *Rankin* only in that an alert bystander recovered the gun first.

Light relies on a Sixth Circuit case, *United States v. Beverly*, 750 F.2d 34 (6th Cir. 1984), to support his claim of insufficient evidence. In *Beverly*, a police officer executing a search warrant discovered Beverly and another man standing in the kitchen of a third person's residence with a waste basket between their feet. There were two guns in the waste basket, one of which had Beverly's fingerprint on it. The Sixth Circuit panel held that this evidence only showed that Beverly had, at some point, touched a gun in someone else's residence. The panel found this to be insufficient evidence to support a jury's finding that Beverly had "possessed" the gun. *Id.* at 35-37.

We first note that *Beverly* does not reflect the law of this circuit as expressed in *Echols* and *Rankin*. In addition, the facts of the instant case are easily distinguishable from *Beverly*. First, two police officers observed Light drop an object at the spot where the gun was found, while no one saw Beverly place anything in the waste basket. Second, another potential possessor of the gun was standing next to Beverly within reach of the waste basket, while Light was unaccompanied at the northwest corner of Winslow's. These differences are sufficient to make *Beverly* inapplicable to the instant case.

Finally, Light argues that two other people observed in the area were potential sources for the gun. Two Winslow's employees testified that they saw two unidentified people milling around Winslow's parking lot and dumpsters at about 4:30 p.m., a half-hour after Light's arrest. However, Cohen testified that when he handed the recovered gun to Officer Holton, Officers Davis and McCullough were still in the process of arresting Light. According to the time-line established by both Cohen and the officers, the two unidentified people were not observed in the area

until well after Cohen had found the gun and given it to the officers. Viewing this evidence in the light most favorable to the verdict, it was reasonable for the jury to disregard Light's theory of alternate sources for the gun.

Following *Echols* and *Rankin*, we conclude that there was sufficient evidence for the jury to infer that Light possessed the gun.

## B.    Right to Self-Representation

"A defendant who wishes to waive his right to counsel, and thereby to proceed pro se, must do so clearly and unequivocally." *United States v. Webster*, 84 F.3d 1056, 1062 (8th Cir. 1996). A defendant must knowingly and intelligently choose self-representation after being made aware of the "dangers and disadvantages of self-representation." *Reese v. Nix*, 942 F.2d 1276, 1280 (8th Cir. 1991) (quoting *Faretta v. California*, 422 U.S. 806, 835 (1975)). Courts must be cautious in this area because:

> The tension created by the mutual exclusivity of the right to counsel and the right to self-representation places a trial court in a precarious position. If it grants a request for self-representation, the defendant can argue on appeal that [he] did not knowingly and intelligently waive [his] right to counsel.

*Reese*, 942 F.2d at 1280.

Light contends that the district court foreclosed his ability to represent himself. Prior to trial, the district court warned Light about misbehavior in the courtroom. During this exchange, Light asked the district court, "What's the rule on representing yourself?" The district court responded that Light had the option to represent himself but listed the potential negatives of such a decision. The district court then said, "Mr. Williams is your lawyer and he is the individual who will speak for you during the

court proceedings." The district court went on to explain how Light would be able to communicate his ideas to the lawyer during trial. Light did not question his attorney's representation again until his sentencing hearing, when he asked for an appointed lawyer to represent him on appeal.

We conclude that Light did not clearly and unequivocally express a wish to represent himself. In *Reese*, after the trial court denied the defendant's motion for substitute counsel, the defendant stated, "Well, I don't want no counsel then." The trial judge responded, "You're going to have counsel, and these are the two you're going to have. Now, whether you want to consult with them or not, that is up to you. If you choose to sit here and not consult with them, fine, but they are going to be in the courtroom when this case is tried because I'm not going to try the case without adequate counsel present." The defendant contended in a habeas petition that the trial court improperly ignored his request to represent himself. We concluded that Reese was merely expressing frustration and not clearly invoking his right to self-representation. Since the right was never properly invoked, it was never improperly denied. *Reese*, 942 F.2d at 1281.

In the instant case, Light asked the district court, "What's the rule on representing yourself?" Because Light only asked the district court for information about "the rule" on self-representation and then manifested no intention to actually represent himself, this is an even more equivocal statement than the one we considered and rejected in *Reese*. As in *Reese*, the right to self-representation could not have been denied improperly because Light did not clearly and unequivocally invoke it. Furthermore, the district court's ensuing dialogue with Light cannot reasonably be read as having foreclosed Light's ability to ask to represent himself. In the context of the entire exchange, it appears that the district court was simply explaining the role of counsel to Light. The district court left Light plenty of room to express himself on the issue without feeling intimidated. The district court did not interfere with Light's right to self-representation.

## C. Sentencing Issues

Light argues that his sentence, pronounced under mandatory Sentencing Guidelines, is erroneous under *United States v. Booker*, 543 U.S. ---, 125 S. Ct. 738 (2005). Before the district court, Light did not argue *Apprendi* or *Blakely* error or that the Guidelines were unconstitutional. Therefore, we review his sentence for plain error. *United States v. Pirani*, No. 03-2871, slip op. at 6 (8th Cir. Apr. 29, 2005) (en banc).

We apply the plain-error test as set forth in *United States v. Olano*, 507 U.S. 725, 732-36 (1993). The test has been stated as follows:

> before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

*Pirani*, slip op. at 7 (quoting *Johnson v. United States*, 520 U.S. 461, 466-67 (1997)).

As in *Pirani*, the first two factors are satisfied because the district court committed error in applying the Sentencing Guidelines in a mandatory fashion, and the error is plain at the time of appellate consideration. *See Pirani*, slip op. at 8. To satisfy the third *Olano* factor, Light must demonstrate "a reasonable probability that he would have received a more favorable sentence with the *Booker* error eliminated by making the Guidelines advisory." *Id.* at 10.

Light had an extensive history of violent felonies and serious drug offenses. He was subject to a 15-year mandatory minimum under 18 U.S.C. § 924(e). Under U.S.S.G. § 4B1.4(b)(3)(B), the Armed Career Criminal provision, his base offense level was 33. His criminal history category was VI. From the resulting Guidelines range of 235 to 293 months, Light was sentenced to 235 months.

After carefully reviewing the record on appeal, we conclude that Light cannot demonstrate a reasonable probability that the district court would have imposed a more favorable sentence under advisory Guidelines. The district court sentenced Light to the lower end of the applicable Guidelines range. However, a sentence at the bottom of the range "is insufficient, without more, to demonstrate a reasonable probability that the court would have imposed a lesser sentence absent the *Booker* error." *Id.* at 12.

While the district court stated that "my discretion is limited to that 235 to 293" by "congressional mandate," it also made note of Light's "long, exhaustive" criminal history. There is no indication in the record that, given broader discretion, the district court would have given a lesser sentence. "'[W]here the effect of the error on the result in the district court is uncertain or indeterminate–where we would have to speculate–the appellant has not met his burden of showing a reasonable probability that the result would have been different but for the error.'" *Id.* at 13 (quoting *United States v. Rodriguez*, 398 F.3d 1291, 1301 (11th Cir. 2005)).

We conclude that Light cannot satisfy his burden under the third *Olano* factor. We need not reach the fourth factor. Light's sentence was not plain error under *Booker*.

## III.  CONCLUSION

Sufficient evidence supports Light's conviction for being a felon in possession of a firearm.  In addition, the district court did not deny Light's right to self-representation, and Light's sentence under mandatory Sentencing Guidelines was not plain error under *Booker*.  Therefore, we affirm the conviction and sentence.

_____