Filed 3/25/14  P. v. Parish CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>STEPHEN MCAVOY PARISH,<br><br>    Defendant and Appellant. | D063869<br><br><br><br>(Super. Ct. No. SCD240397) |

APPEAL from a judgment of the Superior Court of San Diego County, Joan P. Weber, Judge.  Affirmed.

Cannon & Harris and Gregory L. Cannon, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Scott C. Taylor and Parag Agrawal, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Stephen McAvoy Parish of five counts of robbery (Pen. Code,[1] § 211). Prior to trial, Parish entered guilty pleas to possession of a firearm by a felon (§ 29800, subd. (a)), possession of ammunition (§ 30305, subd. (a)(1)), and carrying a concealed firearm in a vehicle (§ 25400, subds. (a)(1) & (c)(1)). Parish also admitted a strike prior (§ 667, subds. (b)-(i)), a serious felony prior (§ 667, subd. (a)(1)) and two prison priors (§ 667.5, subd. (b)). Parish was sentenced to a determinate term of 22 years 4 months in prison.

Parish appeals challenging his robbery convictions. He contends the trial court erred in denying his motion for self-representation made at the close of evidence in the trial. Parish also contends there is insufficient evidence to support three of the robbery counts.

We will find the trial court acted well within its discretion in denying Parish's very late motion for self-representation. Viewing the evidence at trial under the proper standard of review, we will find there is sufficient substantial evidence to support the challenged robbery convictions and affirm the judgment.

STATEMENT OF FACTS

A. Count 1: Robbery of AM/PM Store on Murphy Canyon Road

At about 10:30 p.m. on March 10, 2012, Parish entered an AM/PM store. He asked the clerk for a carton of "Marlboro 100s." The clerk turned around to get the cigarettes and when he looked back, Parish pointed a gun at him. Parish said "give me all

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

the cash." The clerk gave the cash to Parish who took the cash and cigarettes and left. Parish was wearing a black puffy jacket with a hood over his head.

The clerk later identified a black puffy jacket, which had been later found in Parish's garage, as the one worn during the robbery. He also identified the plastic gun, which was recovered during a later robbery, as similar to the one used by Parish. The jury also viewed the surveillance video with audio taken during the robbery. The clerk identified Parish as the person who committed the robbery.

### B. Count 2: Robbery at ARCO

At around 7:00 p.m. on March 11, 2012, Parish entered an ARCO store on Mission Gorge Road in San Diego. Parish was wearing a hooded sweatshirt, red hat and sunglasses. He ask the clerk for a carton of "Marlboro 100s Long" cigarettes. When the clerk said she did not have cartons of cigarettes Parish tapped a gun on the counter and told her to "give me all your money." Parish left with the cash from the clerk and also took a pack of cigarettes. The clerk did not identify Parish at trial, however the jury viewed the video and audio surveillance. The surveillance photos showed the robber was wearing a sweatshirt with the logo "Viejas" on it.

### C. Count 3: Robbery of AM/PM store on Clairemont Mesa Boulevard

This robbery took place on March 11, 2012 at about 10:05 p.m. Parish entered the store wearing a dark hooded sweatshirt, red hat and sunglasses. He asked for a carton of "Marlboro Reds" cigarettes. When the clerk said he did not sell cartons, Parish asked for two packs of Marlboro Medium 100s. When the clerk obtained the cigarettes Parish slammed a gun on the counter and demanded the cash from the register.

3

The robbery was briefly interrupted when a customer entered to pay for gas. Parish waited and when the customer left Parish said: "Give me the cash. Give me the cash. Give me the cash." The clerk gave Parish the cash, who then left with it plus the two packs of cigarettes.

The clerk did not identify Parish at trial but did identify the Viejas sweatshirt, which had been taken from Parish at a later robbery, as being the shirt he saw during the robbery of his store. Once again the jury saw the surveillance video with audio taken during the robbery.

### D. Count 4: Robbery of a United Oil Gas Station

This robbery occurred on March 12, 2012 at about 10:20 p.m. Parish approached the cashier wearing a dark hooded jacket, hat and sunglasses. He asked the clerk for a carton of Marlboro cigarettes. As the clerk scanned the carton, Parish said: "Give me all the money." He had a black gun in his hand. Parish left with the money and the cigarettes.

The clerk did not identify Parish at trial, however the jury viewed the surveillance video of the robbery. The robber was wearing a hooded sweatshirt with the logo "Viejas" on it.

### E. Count 5: Robbery of a Shell Gas Station

The final robbery in this case occurred on March 13, 2012 at a Shell gas station on Clairemont Mesa Boulevard. The clerk noticed Parish at around 9:30 p.m. Because Parish was dressed in a hooded sweatshirt and had on dark glasses, the clerk was suspicious. Parish told the clerk he was there to buy iced tea. When the clerk returned to

4

the cash register, Parish slammed a gun on the counter and told the clerk it was a robbery and "now, give me your money."

As Parish reached for the money, the clerk grabbed the gun, and immediately recognized it was a fake gun. Parish ran out the door toward a burgundy colored Chrysler with the clerk in pursuit. The clerk grabbed Parish and a struggle ensued. During the struggle a woman got out of the car, but the clerk told her to get back into the car. The clerk pinned Parish down, but as the clerk tried to call 911, Parish was able to escape into the Chrysler and drive away. In the struggle, the clerk ripped the sweatshirt and sunglasses from Parish. The sweatshirt had the "Viejas" logo on it. The clerk identified Parish and the jury viewed the surveillance video.

Police investigation following the robberies focused on Parish. Police had reviewed all of the surveillance videos and noted the similarities of the five robberies. On April 25, 2012, police contacted Parish and arrested him. They noticed he walked with a limp similar to the limp displayed by the robber in the surveillance videos. Police thereafter seized a black puffy jacket from Parish's garage along with a pair of white sneakers similar to those on the surveillance videos. They also determined that Parish smoked cigarettes.

DNA samples were taken from the Viejas sweatshirt, plastic gun and sunglasses. They contained a mixture of DNA samples. Parish could not be excluded from the jacket. Parish was the major contributor to the samples from the sweatshirt and sunglasses.

5

DISCUSSION

I

*DENIAL OF SELF-REPRESENTATION*

A.  Background

Throughout the trial court proceedings, Parish had frequent disagreements with appointed counsel.  Parish brought three different motions to replace appointed counsel pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).  Each was thoroughly discussed during in camera proceedings and each was denied.  Parish does not challenge the trial court's decisions denying those motions.

Following the denial of his first motion, Parish requested to represent himself. After lengthy discussion with the trial court, Parish was permitted to discuss self-representation with his family.  Following those discussions, Parish withdrew his request.

After the prosecution rested and the court denied Parish's motion for acquittal (§ 1118.1), defense counsel stated he did not intend to call witnesses.  At that point another *Marsden* motion was made.  Again the motion was denied.  Parish again made a motion to represent himself.  A lengthy discussion followed in which the court explored the reasons for the late request.  It appeared that Parish was in disagreement with counsel's strategy, particularly with regard to calling alibi witnesses.  Counsel represented he had investigated the witnesses and determined not to call them.  Parish disagreed.  He said he wanted to represent himself and call an unspecified number of unnamed witnesses.  The trial court denied his motion as untimely and found it was made for purposes of delay.

6

Parish contends the trial court erred in denying his motion for self-representation. He contends the motion was timely and even if it was not, the court abused its discretion in denying the request.

## B.  Legal Principles

As part of the Sixth Amendment right to counsel, a defendant has a right to self-representation if the request is timely, unequivocal and made after a knowing and intelligent waiver of the right to counsel.  (*Faretta v. California* (1975) 422 U.S. 806, 819; *People v. Koontz* (2002) 27 Cal.4th 1041, 1069.)  The right is absolute if made far enough in advance of trial, with a valid waiver.  (*People v. Lynch* (2010) 50 Cal.4th 693, 721.)  Once the defendant goes to trial represented by counsel, subsequent requests for self-representation are arguably untimely.  Where the request is made during trial, the right to self-representation is no longer absolute.  Rather, the decision to grant or deny the request is within the sound discretion of the trial court.  (*Id.* at pp. 721-722; *People v. Windham* (1977) 19 Cal.3d 121, 128.)

We review the trial court's ruling on a late application for self-representation under the abuse of discretion doctrine.  We review the trial court's inquiries and its stated reasons for its ruling.  Even where the court does not fully state its reasons we look to the record to determine if it supports the trial court's decision.  (*People v. Dent* (2003) 30 Cal.4th 213, 218.)

## C.  Analysis

The trial court was clearly aware of the struggles between Parish and appointed counsel.  The court denied two *Marsden* motions before the request at issue here.  The

7

court had also discussed self-representation with Parish at the start of the trial proceedings. It is also beyond dispute that the second request for self-representation was untimely. The trial process was essentially complete with the exception of closing arguments and instructing the jury. The request grew out of another dispute with trial counsel over trial strategy. Thus the trial court could well conclude the request was made out of anger and frustration and not truly a request for self-representation. (*People v. Lewis* (2006) 39 Cal.4th 970, 1002.)

Although the trial court did not address specifically what made this last minute request untimely, it is not hard to deduce why the court made that finding. Taken at face value, Parish was proposing to start over with the defense. It would seem that no witnesses had been subpoenaed for trial given defense counsel's statements. The identity and number of witnesses is unclear and plainly there would have to be a disruption of the trial for an unknown period of time. It is hard to conceive of the trial court's decision under these circumstances being an abuse of discretion. As we have noted, this jury trial was essentially complete save for argument and instruction. Disrupting the trial at this point would have been entirely inappropriate. Further, this trial judge had spent a great deal of time dealing with Parish's concerns and given the weight of the evidence against him, the court could reasonable conclude the purpose of the motion was delay and possible disruption of the trial. We find no error in denying Parish's *Faretta* motion.

## II

### *SUFFICIENCY OF THE EVIDENCE FOR COUNTS 2 THROUGH 4*

Parish contends the evidence is not sufficient to support the convictions for counts 2 through 4. His contention is rather straightforward. He contends since the clerks in counts 2 through 4 could not identify him as the robber, the remaining evidence is not sufficient to prove he committed those offenses. We disagree and find reasonable jurors could have been convinced, beyond a reasonable doubt, that the person who committed the robberies in counts 1 and 5 was the same person who committed the remaining robberies. Indeed, we agree with the trial court's assessment that the evidence of Parish's guilt is quite strong.

### A. Legal Principles

When we review a challenge to the sufficiency of the evidence in a criminal case, we apply the very familiar substantial evidence standard of review. Under that standard we review the entire record in the light most favorable to the trial court's decision. We draw all reasonable inferences in favor of that decision and we do not weigh the evidence or make credibility decisions. Our task is to determine whether a reasonable fact finder could find the defendant guilty beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 577-578; *Jackson v. Virginia* (1979) 443 U.S. 307, 319.) "Where, as here, the jury's findings rest to some degree upon circumstantial evidence, we must decide whether the circumstances reasonably justify those findings, 'but our opinion that the circumstances might reasonably be reconciled with a contrary finding' does not render the evidence insubstantial." (*People v. Earp* (1999) 20 Cal.4th 826, 887-888.)

9

B.  Analysis

We note at the outset there is no contention that the robberies did not occur in this case.  Rather, the sole challenge to counts 2 through 4 is to the identity of the perpetrator.  Our analysis therefore starts with the two principal anchors of identity in this case.  There is no dispute that Parish committed the robberies in counts 1 and 5; nor could there be any meaningful challenge on this record.  What the challenge in this case principally ignores is the weight of circumstantial evidence regarding the remaining counts.

In the first robbery Parish was positively identified and the black puffy jacket similar to that which was worn during the robbery was found later in his garage.  The jurors observed the surveillance videos and photos.  Like all of the other robberies, the first was at night, in a convenience store connected with a gas station.  The essential methodology was the same; requesting Marlboro cigarettes followed by producing what appeared to be the same gun and then demanding cash.  Each robbery was by an older white male, with a beard and a hood over his head.  The videos also showed the person walking with a limp, similar to that of Parish, later observed by police.

In the final robbery attempt, Parish was positively identified and his hooded sweatshirt and sunglasses were torn from him in his struggle with the clerk.  Parish's DNA samples connected him to the sweatshirt and sunglasses.

The robberies in counts 2 through 4 were all conducted in the same manner, same general area and similar time frame.  Each of the challenged robberies was done in a fashion strikingly similar to those in counts 1 and 5.  Importantly, in the robberies in counts 2 through 5 the robber was wearing the same dark colored sweatshirt with the

10

Viejas logo clearly visible on it. The robber in each count wore a hat and sunglasses, was an older white male with a beard, and in each instance the robbery was recorded on surveillance videos.

We are satisfied that the jurors, having viewed the surveillance material and the almost identical actions taken by the robber in all counts could reasonably conclude that Parish, positively connected to counts 1 and 5, was also the perpetrator of counts 2 through 4. The evidence at trial fully supports the convictions on all five counts of robbery.

DISPOSITION

The judgment is affirmed.


HUFFMAN, Acting P. J.

WE CONCUR:


HALLER, J.


McINTYRE, J.

11