[No. S024645. Apr. 10, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
OMAR DENT III, Defendant and Appellant.

214

---

**COUNSEL**

Lynne S. Coffin, State Public Defender, under appointment by the Supreme Court, Jay Colangelo and Andrew S. Love, Assistant State Public Defenders,

and Jessica K. McGuire, Deputy State Public Defender, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, John R. Gorey, Sharlene A. Honnaka and Russell A. Lehman, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BROWN, J.**—A jury found defendant Omar Dent III guilty of the first degree murder of Byung Kim (Pen. Code,[1] §§ 187, subd. (a), 189), the second degree robbery of Kim (§ 211), kidnapping for robbery of Kim (§ 209, subd. (b)), the attempted murder of August Cardino (§§ 664, 187, subd. (a), 189), and the attempted second degree robbery of Cardino (§§ 664, 211). The jury also found defendant had personally used a firearm for all five crimes, and as to the crimes against Cardino, had intentionally and personally inflicted great bodily injury on Cardino (§§ 12022.5, 12022.7). The jury further found true the special circumstance allegation of murder during the commission of robbery. (§ 190.2, subd. (a)(17).) Defendant was sentenced to death.

The case is before us on defendant's automatic appeal. (Cal. Const., art. VI, § 11; Pen. Code, § 1239, subd. (b).) For the reasons that follow, we reverse the judgment under compulsion of *Faretta v. California* (1975) 422 U.S. 806 [95 S.Ct. 2525, 45 L.Ed.2d 562] (*Faretta*).

### DISCUSSION

*Factual Background*

On or about August 25, 1988, Mr. Halvor Miller and Mr. Charles Maple were appointed to represent defendant. Mr. Miller was lead counsel, Mr. Maple associate counsel.

Defendant's trial was ultimately scheduled to begin on March 6, 1991. At 9:50 a.m. on that day, neither defense counsel had appeared. Judge Flynn, who was presiding over a different death penalty trial in which Mr. Miller was appearing, had contacted the court the night before, and the court had agreed, pending consultation with defendant, to "go with the one attorney," Mr. Maple.

---

[1] All statutory references are to the Penal Code.

At 10:30 a.m., Mr. Maple had still not appeared. Defendant was present. The trial judge delineated the history of defense counsel's requests for continuances and failure to appear on the record. The court stated his clerk had spoken to Mr. Maple's office at 10:25 a.m., and was told he was just leaving his office in Pasadena; the court did not anticipate his arrival for at least an hour. "[W]e have a jury panel of 260 people out in the hallway here, waiting to start this case now." The court then listed the charges in the information, and told defendant, "These are all very, very serious charges. And I think that you should definitely have attorneys here to represent you that have the time to spend on a case. I think Mr. Maple and Mr. Miller have done an excellent job on this case up to this point, but it has now become clear and apparent to this court that they are just simply too busy to pay attention to your case and to give your case the attention that it deserves. . . . This is your case. I am very concerned about your case, Mr. Dent. I am very concerned with you getting all of your constitutional rights. The court is very concerned primarily with you getting a fair trial. The court is concerned with having you properly represented by counsel at all stages of the proceedings which you are absolutely entitled to. It is now 25 minutes before 11:00 o'clock. I think it would be unfair to the taxpayers of Los Angeles County to continue to hold this jury panel out here any further. So what I am going to do is I am going to continue this case." The trial court then relieved Mr. Miller and Mr. Maple as counsel of record. "You must be represented by attorneys that are senior trial attorneys. And you have got to have people here to represent you. You cannot represent yourself in this matter. So that's what I want to do and those are the reasons that I am doing it. And these attorneys are hereby relieved as of this time."

Defendant then said, "May I say something, your honor?" The court said, "Mr. Dent, because of the gravity of this case, let me get some attorneys in here to talk to you and I will have the attorneys talk to you because I don't want you to say anything to me that will incriminate you in any way." The court excused the jury panel.

At 11:05 a.m., there were further proceedings. Mr. Maple, who indicated he had mistakenly thought the time to appear was 11:00, was now present. The trial judge reiterated the procedural history of continuances and failures to appear. He then informed Mr. Maple the jury panel had been excused, he was continuing the case, and that he was relieving current defense counsel.

Defendant conferred with Mr. Maple. Mr. Maple then indicated he was ready to proceed with the trial; it was not clear when Mr. Miller would be. The trial court thanked the attorneys for their work, and said, "We just have to move on here."

At this point the following colloquy occurred. Mr. Maple said, "Mr. Dent has expressed concerns to me about replacing both counsel. He feels that it will take an inordinate length of time to prepare the case with two completely new lawyers in the case." The trial court subsequently responded, "They are senior trial attorneys that know the legal profession and are very versed in the rules of evidence and so forth. . . . This case has been continued so many times that we just can't—" Mr. Maple said, "I don't quarrel with any of the continuances . . . . As I say I am ready. Mr. Dent wishes me to proceed. That is the wish that he expressed to me just now." The court said, "All right." Mr. Maple said, "In the alternative he would consent to the appointment of one other counsel in place of Mr. Miller, as I understand it; is that—" Defendant said, "That's correct." Mr. Maple said, "The other alternative that he proposes to the court is that he proceed in pro. per. He thinks he would be more inclined to get a fair trial that way than he would with—" The trial judge interrupted, "I am not going to let him proceed pro. per." Mr. Maple continued, "—Than he would with counsel." The court said, "Not in a death penalty murder trial." Mr. Maple said, "I have cautioned him about that myself. He has just expressed that view to me this morning and he had never expressed that view to either Mr. Miller to my knowledge or never to myself. Is that not true, Mr. Dent?" Defendant said, "I ain't never expressed it. But if I receive two new counsel, I would like to go pro. per." The trial judge said, "Anything further, Mr. Maple?" Mr. Maple said, "That's all I have, your honor." The court said, "Okay. Thank you, Mr. Maple. You are relieved as counsel of record in this case." Former defense counsel were ordered to turn over their files, an afternoon hearing was scheduled in the case, the court declined to order an expedited transcript of the morning's proceedings, and the proceedings were adjourned. New defense counsel were appointed that afternoon. Defendant did not subsequently renew his *Faretta* motion.

*Analysis*

■ When "a motion to proceed *pro se* is timely interposed, a trial court must permit a defendant to represent himself upon ascertaining that he has voluntarily and intelligently elected to do so, irrespective of how unwise such a choice might appear to be. Furthermore, the defendant's 'technical legal knowledge' is irrelevant to the court's assessment of the defendant's knowing exercise of the right to defend himself." (*People v. Windham* (1977) 19 Cal.3d 121, 128 [137 Cal.Rptr. 8, 560 P.2d 1187] (*Windham*), quoting *Faretta, supra,* 422 U.S. at p. 836 [95 S.Ct. at pp. 2541-2542].) Erroneous denial of a *Faretta* motion is reversible per se. (*McKaskle v. Wiggins* (1984) 465 U.S. 168, 177, fn. 8 [104 S.Ct. 944, 950-951, 79 L.Ed.2d 122].)

■ When confronted with a request to proceed in propria persona, a trial court must make the defendant "aware of the dangers and disadvantages of

self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' " (*Faretta, supra,* 422 U.S. at p. 835 [95 S.Ct. at p. 2541].) Unlike the right to representation by counsel, " '[T]he right of self-representation is waived unless defendants articulately and unmistakably demand to proceed *pro se.*' " (*People v. Marshall* (1997) 15 Cal.4th 1, 21 [61 Cal.Rptr.2d 84, 931 P.2d 262] (*Marshall*); *id.* at p. 23 ["[T]he court should draw every reasonable inference against waiver of the right to counsel"]; see *Brewer v. Williams* (1977) 430 U.S. 387, 391, 404 [97 S.Ct. 1232, 1242, 51 L.Ed.2d 424] ["courts indulge in every reasonable presumption against waiver" of the postarraignment right to counsel].) In determining on appeal whether the defendant invoked the right to self-representation, we examine the entire record de novo. (See *Marshall,* at pp. 24-25.)

The Attorney General argues defendant never made a request to represent himself within the meaning of *Faretta* because the suggestion he proceed in propria persona was "impulsive, ambivalent, and prospective, and therefore equivocal." *Faretta*'s emphasis "on the defendant's knowing, voluntary, unequivocal, and competent invocation of the right suggests that an insincere request or one made under the cloud of emotion may be denied." (*Marshall, supra,* 15 Cal.4th at p. 21; *People v. Barnett* (1998) 17 Cal.4th 1044, 1087-1088 [74 Cal.Rptr.2d 121, 954 P.2d 384].)

 Here, it is apparent the trial court denied the request to proceed in propria persona on an improper basis, i.e., because it was "a death penalty murder trial." In *People v. Joseph* (1983) 34 Cal.3d 936, 939 [196 Cal.Rptr. 339, 671 P.2d 843], five months prior to trial, counsel sought to be relieved, and the defendant sought to represent himself. The trial court relieved counsel, denied the *Faretta* motion, and appointed new counsel. (*Id.* at pp. 941-943.) " 'The court feels, because of the nature of the charge, you are not able to represent yourself adequately . . . . [¶] . . . [¶] Your request to go pro per, because this is a capital case, is denied.' " (*Id.* at p. 942.) This court reversed the death judgment (*id.* at pp. 939, 948), stating "the nature of the charge is irrelevant to the decision to grant or deny a timely proffered *Faretta* motion." (*Id.* at p. 945; *People v. Hardy* (1992) 2 Cal.4th 86, 196 [5 Cal.Rptr.2d 796, 825 P.2d 781] ["*Faretta* motion cannot be denied because of the seriousness of the charge"].)

Even though the trial court denied the request for an improper reason, if the record as a whole establishes defendant's request was nonetheless properly denied on other grounds, we would uphold the trial court's ruling. After reviewing the record, we are unable to reach that conclusion.

Arguably, defendant's request to proceed in propria persona was not equivocal. Counsel said that if the court was not inclined to allow defendant

to retain either both or one of his current counsel, "[t]he other alternative that he proposes to the court is that he proceed in pro. per. He thinks he would be more inclined to get a fair trial that way than he would with . . . counsel." (*People v. Michaels* (2002) 28 Cal.4th 486, 524 [122 Cal.Rptr.2d 285, 49 P.3d 1032] ["nothing equivocal in a request that counsel be removed and, if not removed, that the defendant wants to represent himself"].) Moreover, the trial court, which was in a position to view defendant's demeanor, appears to have treated the request to proceed in propria persona not as equivocal but serious, and emphatically denied it.

We need not decide this issue, however, because whether or not defendant's request was equivocal, the trial court's response was not only legally erroneous but also unequivocal, and foreclosed any realistic possibility defendant would perceive self-representation as an available option. Thus, even assuming defendant's request was equivocal, the trial court's response effectively prevented defendant from making his invocation unequivocal.

In response to the request, the court stated, "I am not going to let him proceed pro. per. . . . Not in a death penalty murder trial." When defendant then repeated the request in the context of confirming to his trial counsel he had not previously raised the possibility of proceeding in propria persona, the trial court ignored his remark, briefly discussed logistical details, and adjourned the proceedings. Moreover, earlier that morning the trial judge had stated to defendant he could not represent himself; when he then mentioned he was removing defendant's counsel, he declined to let defendant speak. While the trial judge was concerned defendant might make an incriminating statement, the court's instruction to not speak, combined with the court's subsequent categorical denial of the *Faretta* request, may well have convinced defendant the self-representation option was simply unavailable, and making the request again would be futile. Hence, this case is unlike those relied on by the Attorney General in which failure to renew a *Faretta* motion was held to be evidence of equivocation. (*Reese v. Nix* (8th Cir. 1991) 942 F.2d 1276, 1280-1281; *Jackson v. Ylst* (9th Cir. 1990) 921 F.2d 882, 888-889.) We do not require trained counsel to repeatedly make a motion that has been categorically denied; how much more should we require of an untrained defendant seeking self-representation? (See *Orazio v. Dugger* (11th Cir. 1989) 876 F.2d 1508, 1512 ["To avoid a waiver of a previously-invoked right to self-representation, a defendant is not required continually to renew a request once it is conclusively denied or to 'make fruitless motions or forego cooperation with defense counsel in order to preserve the issue on appeal' "].)

Similarly, the Attorney General argues defendant's words, "[I]f I receive two new counsel, I would like to go pro. per.," indicate "the third of his three

alternative suggestions was conditional and prospective in nature, i.e., that if and when the court appointed new counsel for him, he would then move to represent himself. Given that, upon actually meeting with his newly appointed counsel, [defendant] did not so move, but instead elected to accept and enjoy their representation throughout all phases of trial and sentencing," defendant "can fairly be held to have abandoned his conditional and prospective suggestion."

As noted above, this "conditional" statement was made in response to counsel's inquiry as to whether defendant had previously raised the possibility of proceeding in propria persona. Counsel did not think defendant had, and asked defendant if this was correct. Thus, defendant's statement appears to be more of an affirmation of counsel's representation he had not previously raised the possibility of proceeding in propria persona rather than an assertion he was going to make a *Faretta* motion in the future. Arguably, his choice of the word "would" in isolation suggests a prospective intent. However, viewed in context, defendant appears to have been simply confirming counsel had correctly conveyed to the court the request defendant had earlier communicated to counsel. While defendant still may have desired in propria persona status, and perhaps for that reason chose the word "would," it was a request any reasonable person in the courtroom would recognize had already been denied and the matter closed. Thus, his statement was not a motion, prospective or otherwise.

Moreover, even if defendant was making a prospective and conditional statement, it is unlikely defendant would realistically feel the option of in propria persona status was available. Again, it must be remembered that only moments before, the trial court had categorically denied defendant's request. In addition, following the statement, the court made no response but spoke only to counsel regarding other topics and almost immediately thereafter adjourned the proceedings. Under these circumstances, it is less probative than in other cases that defendant failed to renew his motion upon meeting his new counsel.

Had the trial court engaged in any inquiry into defendant's request, as required by *Faretta*, the record as to whether the request was merely impulsive, as the Attorney General argues, would be clearer. The limited record indicates defendant's request was motivated by the trial court's sua sponte removal of counsel defendant had worked with for two and a half years and wished to retain. To this extent, the request was no doubt based in part on emotion. Nonetheless, defendant also expressed concern about the "inordinate" delay inherent in appointing new counsel. This reasoning suggests a practical and not entirely emotional response. Moreover, Mr. Maple

informed the court he had "cautioned" defendant about self-representation in a capital case. This suggests defendant made the request to proceed in propria persona with at least some awareness of the disadvantages of such status. Nor is there any evidence defendant asserted the right of self-representation as a "vehicle for manipulation and abuse." (*Marshall, supra,* 15 Cal.4th at p. 22.)

The Attorney General argues that defendant's response to the trial court's inquiry later on March 6, 1991, demonstrates the request to proceed in propria persona was merely emotional. During the afternoon of March 6, new counsel were appointed for defendant. At the beginning of this hearing, the trial court inquired, "How are you doing, Mr. Dent?" Defendant replied, "Fine," and the hearing commenced. At the end of the hearing, the court asked, "Mr. Dent, everything okay with you? Are you getting your showers okay and getting your medication? Everything okay?" Defendant replied, "Yes, your honor." The court said, "If you need anything, you tell these attorneys and they will tell me and I will be sure you get it." Nothing in these inquiries suggests the trial court was inviting defendant to renew the *Faretta* request the court had earlier categorically denied.

For all of these reasons, we conclude that whether or not defendant's request to proceed in propria persona was equivocal, the trial court's response foreclosed any realistic possibility defendant would view self-representation as an available option. The Attorney General further contends, however, that even if defendant's request was clear and unequivocal, it was untimely. As noted earlier, "when a motion to proceed *pro se* is timely interposed, a trial court must permit a defendant to represent himself upon ascertaining that he has voluntarily and intelligently elected to do so." (*Windham, supra,* 19 Cal.3d at p. 128.) ▮ "However, once a defendant has chosen to proceed to trial represented by counsel," a motion for self-representation is addressed to the "sound discretion of the court." (*Ibid.*)

Here, the trial court stated at least twice prior to the *Faretta* motion that the trial would be continued because it was sua sponte relieving current counsel and appointing new counsel. Hence, since no trial was imminent, and did not in fact occur for over four months, the motion appears timely. The Attorney General's reliance on *Marshall, supra,* 15 Cal.4th 1, and *People v. Clark* (1992) 3 Cal.4th 41 [10 Cal.Rptr.2d 554, 833 P.2d 561], is misplaced. *Marshall* merely states a trial court's determination that a *Faretta* "motion is untimely does not become erroneous simply because, for example, an imminent trial ultimately is postponed." (*Marshall,* at pp. 24-25, fn. 2.) That is not the situation here. Indeed, defendant's motivation for suggesting in propria persona status was to *expedite* the proceedings and

avoid the delay inherent in the appointment of entirely new counsel. In *Clark*, we concluded the *Faretta* motion was made "in effect [on] the eve of trial" because the case was being continued on a day-to-day basis in the expectation jury selection would begin at any time. (*Clark*, at pp. 99-100.) Again, that is not the situation here. Moreover, the precipitating cause of the *Faretta* motion, the trial court's sua sponte removal of counsel and announced intention to appoint new counsel, had only happened earlier the same morning the *Faretta* motion was made.

"It is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts." (*Faretta, supra,* 422 U.S. at p. 834 [95 S.Ct. at p. 2540]; see Decker, *The Sixth Amendment Right to Shoot Oneself in the Foot: An Assessment of the Guarantee of Self-Representation Twenty Years after Faretta* (1996) 6 Seton Hall Const. L.J. 483, 489-490.) Moreover, the evidence against defendant was overwhelming, and our review of the record indicates defendant was vigorously and adequately represented and received a fair trial.

■■ Nevertheless, it is apparent the trial court denied the self-representation request because of the court's erroneous understanding of the law, not because the request was equivocal or untimely.[2] Nor, for the reasons above, does our independent review of the record enable us to conclude the request was otherwise properly denied either because it was equivocal or untimely. Under these circumstances, and under compulsion of *Faretta*, we reverse the judgment. Hence, it is unnecessary to reach defendant's other claims.

### DISPOSITION

The judgment is reversed, and the case remanded to the trial court for further proceedings consistent with this opinion.

George C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Moreno, J., concurred.

**CHIN, J.**—I concur but only under compulsion of *Faretta v. California* (1975) 422 U.S. 806 [95 S.Ct. 2525, 45 L.Ed.2d 562] (*Faretta*) and its progeny. Subject to review of his other contentions, it appears defendant

---

[2]The prosecution bears some of the responsibility for this reversal. Prosecutors should always be acutely aware that violation of the right of self-representation is reversible per se. If for no other purpose than to avoid conducting a trial that is doomed (if it results in a conviction) to appellate reversal before it even begins, the prosecution should try to prevent such a violation. Here, the prosecutor could have easily, during either the hearing or the four months before trial began, prompted the trial court to inform defendant of his nearly absolute right at this point in the proceedings to represent himself.

received a fair trial. His guilt seems beyond question. And I have no doubt that counsel represented him better than he would have done himself.[1] But, under *Faretta*, none of this matters. We must reverse the judgment because the trial court did not allow defendant to represent himself.

In *Faretta*, over strong dissents, the high court found implied in the United States Constitution an unexpressed right of self-representation. (*Faretta, supra*, 422 U.S. 806; see *id*. at pp. 836-846 [95 S.Ct. at pp. 2541-2547] (dis. opn. of Burger, C. J., joined by Blackmun and Rehnquist, JJ.), 846-852 [95 S.Ct. at pp. 2546-2550] (dis. opn. of Blackmun, J., joined by Burger, C. J., and Rehnquist, J.).) I agree with Justice Mosk's observation: "It was unfortunate that *Faretta* v. *California* [, *supra*,] 422 U.S. 806—a noncapital case—in recognizing a general right of self-representation did not distinguish between mere traffic infractions and the heightened requirement of cases in which the issue is life or death." (*People v. Clark* (1992) 3 Cal.4th 41, 174 [10 Cal.Rptr.2d 554, 833 P.2d 561] (dis. opn. of Mosk, J.).) I also sympathize with his view that "[i]f there is the slightest doubt of the knowledge and abilities of the defendant to effectively duel with the skilled prosecutor, the trial court should deny self-representation at the very outset." (*Ibid*.) The problem is that this view is not the law of the land.

As Justice Richardson once observed in concurring in a similar reversal of a death judgment, "The trial court in this death penalty case took the understandable position that, because of the serious nature of the charges facing defendant, he should not be permitted to represent himself. Such a solicitous approach, however, evidently violated *Faretta* v. *California* [, *supra*,] 422 U.S. 806, which limits the trial court's inquiry to the issue whether the defendant knowingly and intelligently waived his right to counsel, and was 'aware of the dangers and disadvantages of self-representation . . . .' (P. 835 [45 L.Ed.2d at p. 582].) It is not, however, essential that defendant be competent to serve as counsel in a criminal case. (P. 836 [45 L.Ed.2d at p. 582].) It is enough that he intelligently waive his right to an attorney and that he understand the risks. This formulation may be dubious but it is the law, even in a capital case." (*People v. Joseph* (1983) 34 Cal.3d

---

[1]The majority states that "the evidence against defendant was overwhelming, and our review of the record indicates defendant was vigorously and adequately represented and received a fair trial." (Maj. opn., *ante*, at p. 222.) But it does not state what that evidence was or describe the crimes, and it does not state anything defense counsel did.

In August 1988, defendant robbed Byung Kim, a merchant, shortly after Kim withdrew $80,000 from a bank to use in his business. Defendant shot and mortally wounded Kim in Kim's van, then fled in the van with the victim. He was apprehended later after he shot a retired police officer. Witnesses observed these events and defendant confessed to the crimes. Defendant had been convicted of voluntary manslaughter in 1983. Defense counsel presented a substantial case in mitigation.

936, 950 [196 Cal.Rptr. 339, 671 P.2d 843] (conc. opn. of Richardson, J.).) Any lingering doubt that this is, indeed, the law was eliminated in *Godinez v. Moran* (1993) 509 U.S. 389 [113 S.Ct. 2680, 125 L.Ed.2d 321], a capital case.

This was not always the situation in California. As the title *Faretta v. California* implies, the defendant, Faretta, challenged California law in effect at the time. That law was quite different from what the high court now decrees. In *People v. Sharp* (1972) 7 Cal.3d 448 [103 Cal.Rptr. 233, 499 P.2d 489], we unanimously found no constitutional right of self-representation. Indeed, as we explained, the California Constitution had recently been amended to permit the Legislature to require that felony defendants be represented by counsel. (*People v. Sharp, supra*, at p. 463, appen.) In anticipation of that amendment, and to take effect on its adoption, the Legislature passed laws requiring counsel for all capital defendants. (Pen. Code, §§ 686, subd. 2, 686.1, 859, 987, subd. (b).)

These statutes still exist, although obviously *Faretta* rendered them invalid. The courts of this state properly ignore them today. But the legislatively stated policy behind these statutes remains the policy of this state, although it cannot be given effect: "The Legislature finds that persons representing themselves cause unnecessary delays in the trials of charges against them; that trials are extended by such persons representing themselves; and that orderly trial procedures are disrupted. Self-representation places a heavy burden upon the administration of criminal justice without any advantages accruing to those persons who desire to represent themselves." (Stats. 1971, ch. 1800, § 6, p. 3898.)

This case contains a great irony. At retrial, defendant may wish to be represented. If so, he will not be bound by the request to represent himself that elicited the trial court's error and won him this reversal. Nothing prevents him from requesting and gaining the benefit of counsel for the retrial. If he does request counsel, then all that the trial court's error in denying self-representation will have accomplished is to give defendant two trials, not just one, in which he is represented by counsel. This result is hard to explain in any rational manner.

There is much to be said for modifying *Faretta*, at least in capital cases, to give the trial court discretion to deny a request for self-representation when no good ground exists for the request and the defendant is not capable of effective self-representation. But such modification is not for us to do. As Justice Richardson stated, we must "await further instruction on the point from the high court which originated the *Faretta* principle." (*People v.*

*Joseph, supra,* 34 Cal.3d at p. 951 (conc. opn. of Richardson, J.).) In the meantime, we have no choice but to obey the high court and reverse this judgment.

Baxter, J., and Brown, J., concurred.