Filed 6/16/22 P. v. Delacruz CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>HECTOR MANUEL DELACRUZ,<br><br>    Defendant and Appellant. | F082830<br><br>(Super. Ct. No. 20CR-02963)<br><br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Merced County. Ronald W. Hansen, Judge. (Retired Judge of the Merced Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)

Eric Weaver, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Ian Whitney, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Smith, Acting P. J., Snauffer, J. and DeSantos, J.

Defendant Hector Manuel Delacruz was convicted of murder, attempted murder, possession of a firearm by a felon, two counts of robbery, and three counts of assault with a firearm. Various special allegations were also found true, including firearm allegations and three prior strike convictions. He was sentenced to 152 years to life plus 61 years in prison. On appeal, defendant contends that the trial court erred in denying his posttrial motion to represent himself at sentencing pursuant to *Faretta v. California* (1975) 422 U.S. 806. The People disagree. We affirm.

## PROCEDURAL SUMMARY

On July 9, 2020, the Merced County District Attorney filed an information charging defendant with the premeditated murder of Santiago Perez Mantar (Pen. Code, §§ 187, subd. (a), 189;[1] count 1), premeditated attempted murder (§§ 664, 187, subd. (a), 190.2, subd. (a)(1); count 2), two counts of second degree robbery (§ 211; counts 3 & 5), three counts of assault with a firearm (§ 245, subd. (a)(2); counts 4, 6, & 7), and possession of a firearm by a felon (§ 29800, subd. (a)(1); count 8). The information further alleged that defendant had suffered three prior "strike" convictions within the meaning of the Three Strikes law §§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)), which also qualified as prior serious felony convictions (§ 667, subd. (a)(1)). As to counts 1, 2, and 3, the information further alleged that defendant used a deadly weapon (§ 12022, subd. (b)(1)); as to count 2, the information further alleged that defendant inflicted great bodily injury (§ 12022.7, subd. (a)) and a principal in the offense was armed with a firearm (§ 12022, subd. (a)(1)); and as to counts 3 and 5, the information further alleged defendant personally used a firearm (§ 12022.53, subd. (b)).

On March 30, 2021, the jury found defendant guilty on all counts and found all deadly weapon, infliction of great bodily injury, and firearm enhancements true.

---

[1] All further statutory references are to the Penal Code.

On April 6, 2021, at a bifurcated hearing outside the presence of the jury, the trial court found true the prior strike and prior serious felony allegations.

On May 20, 2021, the trial court sentenced defendant to 152 years to life plus 61 years as follows: on count 1, 75 years to life (the based term of 25 years to life tripled due to the three prior strike convictions) (§ 667, subd. (e)(2)(A)(i)), plus a one-year deadly weapon enhancement; on count 2, 27 years to life (seven years to life as the base term, plus a three-year great bodily injury enhancement, plus a one-year firearm enhancement, plus a one-year deadly weapon enhancement, plus three five-year serious felony conviction enhancements) (§ 667, subd. (e)(2)(A)(iii)), plus 20 years for enhancements used to calculate the third-strike term, to be served consecutively to the sentence on count 1; on count 5, 25 years to life (§ 667, subd. (e)(2)(A)(ii)), plus a 10-year firearm enhancement and three five-year prior serious felony conviction enhancements, to be served consecutively to the sentence on counts 1 and 2; and on count 7, 25 years to life (§ 667, subd. (e)(2)(a)(ii)), plus three five-year prior serious felony conviction enhancements, to be served consecutively to the sentence on counts 1 and 2. The sentence on counts 3, 4, 6, and 8 were stayed pursuant to section 654.

On May 21, 2021, defendant filed a notice of appeal.

## DISCUSSION[2]

Defendant contends that the trial court erred in denying his posttrial, presentencing motion to represent himself pursuant to *Faretta*. (*Faretta v. California*, *supra*, 422 U.S. 806.)

## A. Additional Background

On August 24, 2020, defendant moved the trial court to appoint replacement counsel pursuant to *People v. Marsden* (1970) 2 Cal.3d 118. He expressed dissatisfaction

---

[2]    Because defendant raises only legal issues on appeal, a factual summary is omitted.

with his counsel's entry of a time waiver and preparation of his defense. Specifically, defendant wanted his trial counsel to obtain bank account information to show that he had several hundred dollars in his bank account, which he believed tended to undercut a motive for robbery. His trial counsel indicated that she planned to obtain the records, but she expressed concern that defendant appeared not to understand that a jury would not certainly find that he lacked a motive to commit robbery because he had several hundred dollars in his bank account. His trial counsel also explained that she had recently received summary DNA evidence from the prosecutor that was harmful to defendant's case—she was waiting on a detailed report—and needed to hire an expert to assess the methodology used by the laboratory. She told the court that she would not proceed to trial without having consulted an expert regarding the DNA evidence and if defendant insisted on going to trial without allowing time for consultation, she would ask the court to relieve her as counsel.

The trial court acknowledged that the bank records were relevant to defendant's motive arguments, but also emphasized the need for defense counsel to consult with a DNA expert and explained that substituting counsel would not result in proceeding to trial any faster. It then denied defendant's motion, finding that it was not in defendant's best interest to have substitute counsel appointed.

On January 21, 2021, defendant again sought replacement counsel pursuant to *Marsden*. Defendant complained that "It[ had] been quite a while" since he had been arrested; he was concerned that he had been in custody for nine months without going to trial and it appeared to him that the case was ready for trial. Defendant's counsel explained that she had to hire an expert to assess the DNA evidence and an expert to assess a surveillance video that she obtained in November 2020. She represented that she kept defendant advised of the progress of the case and moved as quickly as she could. The trial court concluded that between defendant and his counsel there was no "real breakdown in communication, or any inability to get along …." Defendant was just

dissatisfied that the matter had not yet gone to trial. Defendant told the court that "[i]t[ was] frustrating just wa[]sting time, you know, I'm being false imprisonment [*sic*]" and expressed a desire to represent himself to avoid any further delay. The trial court noted that the case had progressed "extremely quickly" for "a case of this magnitude" and that it had made good cause findings for the continuances of the matter. For those reasons, it denied defendant's motion.

On May 18, 2021, prior to sentencing, defendant filed an incomplete "advisement and waiver of right to counsel (*Faretta* waiver)" form. (Capitalization modified.) Rather than writing his initials in the boxes reflecting his acknowledgement of his constitutional rights, the dangers and disadvantages to self-representation, and the court's advice and recommendation, he placed check marks in 11 of the 25 boxes and left the remaining boxes unmarked. Defendant further marked that he had not graduated high school; had "previously been granted the right to proceed in propria persona" in a false imprisonment case in 2017; and indicated that he "underst[oo]d that [he was] charged with the following crime(s): the right for to know the reason of incarceration [*sic*]."

The trial court discussed defendant's right to self-representation and the *Faretta* waiver form with defendant. It explained to defendant that he had the right to represent himself, but his exercise of that right would not provide a basis to continue the hearing. It then inquired of defendant regarding his responses on the *Faretta* waiver form. It explained that defendant was supposed to have initialed the form rather than checked boxes. It also told defendant that he had not marked all the boxes. Defendant responded, "[t]hat's because I don't understand. It clearly says [to mark the box] if I understood." He reiterated that he did not mark the boxes that corresponded to the statements that he did not understand. The court noted that of the 14 boxes relating to the disadvantages of self-representation defendant checked only three. He also did not check the box that acknowledged that he understood that he was entitled to be represented by appointed counsel. Defendant's response was, "Excuse me. The thing is that I'm not trying to go to

trial. [¶] … [¶] The thing is I want to know why my rights were violated. It's violated my whole constitutional rights [*sic*]. [¶] … [¶] Then as far as representation, she's not representing me how it's supposed to. And you can see my whole trial. It was—it was a fast process of it, and she did not represent me how it's supposed to. I had no defense. [¶] … [¶] Basically I'm trying to put a complaint for false representation."

In light of defendant's responses in "the *Faretta* form and the deficiencies there, [the trial court] f[ound] that [defendant] d[id] not understand all of the risk[s] associated with self-representation. [Defendant] [did not] understand, or [was] not able to communicate in an intelligent manner in legal basis for the issues [he was] discussing[.] [T]herefore, [the trial court] den[ied] [defendant's] request … to be self-represented[] … [¶] … [¶], find[ing] that [defendant] ha[d] not made a knowing, intelligent waiver of the right to counsel."

Soon after, in the sentencing proceeding, defendant interjected regarding the facts of the case after he was told by the trial court to be silent: "No. Look, your Honor, if you excuse me. Can I stand up. Did I miss his heart a lot? Because that guy[ is] supposed to be dead. I stabbed him straight in the heart. And you're accusing me of him being alive. And in the evidence provided [¶] … [¶] there is no stab in the heart. [¶] … [¶] The evidence is false imprisonment." The trial court again instructed defendant to be silent. The discussion proceeded as follows:

> "[Defendant]: I want to be heard. I have constitutional rights[,] be fair judge, not f*****g false accuse about …
>
> "[Trial Court]: [Defendant], you're going to maintain a proper decorum.
>
> "[Defendant]: I ain't pretending nothing. I don't mean[] no disrespect[] but I'm not going to get a f*****g life sentence for something I did not do. I[ would] rather you open up the case and charge me for stabbing him in the heart. I personally stabbed that motherf****r in the heart. And that's because you want to keep on playing games. And that's what happened, so I want justice, which I have the right.

6.

"[Trial Court]: [Defendant], you're going to have to stand on the …

"[Defendant]: Hold on. Let me tell you which right it is. It's amendment number seven, which is justice. [¶] … [¶] Figure it out, motherf****r.

"[Trial Court]: … you're not following the Court's orders and you're not respecting the decorum.

"[Defendant]: F**k your sentencing."

Defendant then said he wanted to "confess [to] the murders of Merced—Stanislaus County of September of 2019."[3] The trial court ignored defendant's outbursts and heard victim impact statements. Defendant's counsel did not submit a sentencing brief and did not make any comment regarding the appropriate sentence at the sentencing hearing. The trial court then sentenced defendant.

## B. Analysis

Defendant argues first that the trial court applied the wrong standard in denying his *Faretta* motion. He argues that a request for self-representation made at sentencing must be granted if the invocation of the waiver of the right to counsel is knowingly and intelligently made. He contends that the appropriate inquiry is whether defendant was "mentally competent and fully informed of his right to counsel" as demonstrated by his literacy and understanding of the "dangers of self-representation." He further argues that, contrary to that standard, the trial court focused only on whether defendant had correctly filled out the *Faretta* waiver form and ignored defendant's explanation that "the items he did not check off appeared to apply to trials and that he was not trying to represent himself at trial …."

The People argue that the record as a whole demonstrates that defendant did not understand the disadvantages and risks of self-representation and the trial court therefore properly denied his motion. They also argue that the record is not clear that defendant's

---

**3** The murder at issue in this case took place on April 20, 2020.

7.

goal was to represent himself in light of his responses to the trial court's line of inquiry. As a result, they argue, defendant forfeited the right to represent himself. We agree with the People on both accounts.

As articulated in *Faretta* and its progeny, " '[a] criminal defendant has a right to represent himself at trial under the Sixth Amendment to the United States Constitution. [Citations.] A trial court must grant a defendant's request for self-representation if three conditions are met. First, the defendant must be mentally competent, and must make his request knowingly and intelligently, having been apprised of the dangers of self-representation. [Citations.] Second, he must make his request unequivocally. [Citations.] Third, he must make his request within a reasonable time ….' " (*People v. Stanley* (2006) 39 Cal.4th 913, 931–932.) "Erroneous denial of a proper request is reversible per se." (*People v. Boyce* (2014) 59 Cal.4th 672, 702 (*Boyce*).)

"In determining on appeal whether the defendant invoked the right to self-representation, we examine the entire record de novo." (*People v. Dent* (2003) 30 Cal.4th 213, 218.)

As a threshold matter, as the People correctly note, " 'the *Faretta* right is forfeited unless the defendant ' "articulately and unmistakably" ' demands to proceed in propria persona.' " (*Boyce*, *supra*, 59 Cal.4th 672, 703; accord *People v. Stanley*, *supra*, 39 Cal.4th at p. 932.) "Because the right to counsel is self-executing and persists unless the defendant affirmatively waives the right, the court must indulge every reasonable inference against such a waiver." (*Boyce*, at p. 703.)

At no point during the discussion of defendant's *Faretta* waiver form did defendant express to the court that he wanted to represent himself. Through the course of the discussion, defendant indicated that he did not understand all of the rights set out in the form; he did not want to go to trial, he wanted to know why his rights had been violated, he was dissatisfied with his representation at trial because "it was a fast process[,]" his counsel "did not represent" him the way she was "supposed to[,]" and she

8.

presented no defense; and he wanted to "put a complaint for false representation." Defendant did not articulately and unmistakably demand to represent himself. Indeed, when the court later asked if there was any legal cause why the sentence should not be pronounced, defendant stated he intended to "put a complaint … to the Court in making a statement of I want to be represented fairly and I want justice …." Because defendant did not articulately and unmistakably demand to represent himself, the right was forfeited and the trial court was required to conclude that defendant did not knowingly and intelligently waive his right to representation by counsel.

Next, even if defendant had articulated a demand to represent himself, the trial court properly concluded that defendant did not knowingly and intelligently request to represent himself and demonstrate an understanding of the dangers of self-representation. When asked why he did not mark the unmarked boxes, defendant responded, "[t]hat's because I don't understand." The trial court followed up, "So you don't understand?" Defendant responded, "Those ones I didn't check, no." The court then attempted to explain the right to representation by counsel that defendant would waive by electing to represent himself. In response, defendant told the court that he was "not trying to go to trial." Defendant now contends that his response reflected his understanding that the unchecked boxes related only to risks attendant to going to trial without an attorney. Even assuming that was defendant's intent, defendant's understanding was not effectively communicated. Indeed, defendant immediately thereafter pivoted to asking why his rights had been violated. That goal was consistent with defendant's written statements on the *Faretta* waiver form—that he seemed to believe he was being falsely imprisoned and that he wanted to exercise "the right for to know the reason of incarceration [*sic*]." On that record, we agree with the trial court's conclusion that

9.

defendant did not knowingly and intelligently waive his right to counsel because he did not understand the risks of doing so.[4]

Defendant relies on *People v. Silfa* (2001) 88 Cal.App.4th 1311, 1322, for the proposition that the trial court improperly used the *Faretta* waiver form as a test defendant must pass rather than an opportunity to open a meaningful dialogue with defendant regarding the risks of self-representation. We disagree with defendant's characterization. The trial court did not immediately deny defendant's motion because he did not correctly fill out the *Faretta* waiver form. It asked defendant about the unmarked boxes, to which defendant responded that he left the boxes unmarked because he did not understand. When the trial court attempted to explain the risks of self-representation, defendant told the trial court that he did not intend to go to trial and then said he wanted to submit a complaint about his attorney's conduct at trial.

It was apparent to the trial court, and it is apparent to us, that defendant did not understand the risks of representing himself. We find no error in the trial court's denial of defendant's *Faretta* motion.

## DISPOSITION

The judgment is affirmed.

---

[4] Defendant's outbursts later in the proceeding confirm our conclusion that defendant did not understand the risks of representing himself. Shortly after his motion was denied, defendant admitted stabbing one of the victims and attempted to admit a different murder.