Filed 2/25/25  P. v. Galiciano CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C099604 |
| Plaintiff and Respondent, | (Super. Ct. No. STKCRFE20200008894) |
| v. | |
| LARRY GALICIANO, | |
| Defendant and Appellant. | |

A jury found defendant Larry Galiciano guilty of 10 offenses, including two counts of attempted murder, after he poured gasoline on two people then lit them and their house on fire.  On appeal, he argues we must reverse his convictions because the trial court improperly denied his request to waive his right to the assistance of counsel and represent himself.  The People contend the record does not support defendant's argument.  We agree with the People and affirm.

1

# I. BACKGROUND

In reviewing a ruling on a defendant's request to waive the right to the assistance of counsel, "[c]ourts must indulge every reasonable inference against waiver of the right to counsel." (*People v. Marshall* (1997) 15 Cal.4th 1, 20.) We recite the relevant facts in light of this standard.

Defendant went to an acquaintance's house and asked her for gas money. Defendant then drove with the acquaintance's son to the gas station and filled a can with gas. He returned to the acquaintance's house, told the son to "watch and listen," and then walked over and poured gas on the man who lived next door and lit the man on fire. The neighbor ran into his house screaming, "Babe, I am on fire." Defendant followed into the neighbor's house, poured gasoline on the neighbor's partner, and lit her on fire with a lighter. The fire caused third degree burns over 85 to 90 percent of the two victims' bodies.

The People charged defendant with 10 offenses, including attempted murder of both victims and alleged that several sentence enhancements and aggravating circumstances applied. Defendant initially pled not guilty by reason of insanity. The court ordered defendant to undergo psychological examination by two experts pursuant to Penal Code[1] section 1027. The first expert, a forensic psychologist, concluded that: "at the time of the commission of the act[s] in question [defendant] appeared to understand the nature and quality of his acts. He appeared to have the capacity to predict the natural and probable consequences of his acts and was able to distinguish right from wrong. It appeared that he was able to make a plan of action and act in a purposeful, goal-directed way, and to execute a plan of action. He likely was able to understand and consider the lawful rights of others and act in a considerate, calculating and controlled way."

---

[1] Undesignated statutory references are to the Penal Code.

The psychologist also determined that, "[w]hile [defendant] may have experience[d] bonafide paranoia and auditory hallucinations it appears that at this time he is overexaggerating his symptoms for secondary gain (to be able to utilize the Not Guilty By Reason of Insanity defense to attempt to avoid a life sentence))." Defendant told the psychologist that "his sister had retained an attorney for him for the preliminary [examination] but could no longer afford to pay this attorney. [Defendant] indicated that the private attorney was better for his case then [*sic*] his current defense counsel. [Defendant] stated that the Not Guilty by Reason of Insanity was his idea (and not his attorney[']s) at the encouragement of his sister."

Before the second expert filed a report, defendant asked the court to replace his court-appointed public defender. The court held a closed hearing, pursuant to *People v. Marsden* (1970) 2 Cal.3d 118, at which defendant listed issues with counsel's representation. After questioning appointed counsel about defendant's complaints, the court denied the request. When the court moved on and began discussing a different issue, defendant asked, "Now, you said you're not going to take him off my case?" The court responded, "I'm not going to take him off your case." Defendant immediately stated: "I would like to do pro per." Defendant added, "I'm not going forward with this," presumably referring to his appointed counsel. The court told defendant he could not decide whether defendant could represent himself until the second expert filed a report because "[i]f the doctor's report says, yeah, you are [not guilty by reason of insanity], I don't think by law I can let you represent yourself." The court then gave defendant a "*Faretta* form"[2] to fill out and bring to the next hearing.

At the next hearing one week later, the trial court questioned defendant about his responses to the questions on the form. Defendant indicated he had graduated from high

---

[2] See *Faretta v. California* (1975) 422 U.S. 806.

3

school and attended the University of Phoenix for a year and one-half. Defendant had never represented himself in court before. Defendant did not fill in the section asking if he was "aware of certain legal defenses to the crime." The court then questioned defendant about this section, and defendant suggested that "NGR" constituted a defense, before clarifying that he was referring to "NGI," his not guilty by reason of insanity plea.

The trial court next asked defendant whether he understood that he would be given no help if he was representing himself, which defendant confirmed. The court then asked about another section defendant had left blank, which asked: "What is the punishment for these charges?" Defendant told the court he knew the maximum sentence but not the minimum sentence for the charged offenses. Defendant also left blank the section asking: "How long could you be committed to the hospital under an NGI plea?" When asked, defendant told the court, "[i]t could potentially be life," and explained that he left the section blank because he "didn't see it on there."

After the questioning, the trial court told defendant, "I'll be honest with you, I have a lot of concerns about the lack of answers that are on this sheet and kind of lack of answers that you're giving me. [¶] This is a heavy duty case." Defendant responded: "I understand. [¶] But my thing is I don't feel like [appointed counsel] here is representing me correctly and if I'm going to get life, I'm going to give myself life, not going to give it to the next man." When asked whether he thought he could do a better job than appointed counsel, defendant responded: "I think I rather -- I think I can do a better job than what he's doing for me, yes."

The trial court then asked defendant if he wanted to represent himself at the preliminary examination for a different case, in which defendant faced drug charges, so he could "see how easy or hard it is" and "have a chance to see what you are getting yourself into." Defendant responded, "I just -- I just -- so I kind of already know what I'm getting myself into." The court began telling him, "I don't think you do because the answers you have given me today in," but defendant interrupted and explained: "I mean,

4

I understand the severity of what is happening right now.  I'm in my right sound mind.  I'm not under any drugs.  And I understand that I'll be going in a trial against a very well known DA that is very educated, been to college, and I don't have that, but I really don't want [appointed counsel] representing me, period.  I [would] rather represent myself than let him represent me, period."

The trial court then explained, "I have to know that you understand what you're getting into," and concluded, "I'm not satisfied at this point."  The court asked again, "why don't you represent yourself on the drug case, you can see what it is like being in court with a very well-experienced, very well-known attorney. . . .  [¶] . . . [¶]  Do you want to try it that way?"  Defendant responded, "We'll do that."  After further discussion, defendant reiterated, "We'll go that route.  In my mind, I already decided I don't want to keep [appointed counsel]."

The prosecutor then suggested that the separate case involving drug charges would be a waste of time and should be continued until after the more serious case was finished.  Defendant stated, "I still want to go forward with the preliminary hearing if it's going to get me to represent myself.  Because, like I said, I still feel like I don't want [appointed counsel] representing me."  The trial court explained that the People might dismiss the case, which would leave the court "still in the position of trying to figure out -- figure whether you are competent to represent yourself.  I'm still concerned about the lack of answers you gave me.  If I make a decision today, the answer would be no to be honest with you."

Appointed counsel then interjected to state his concerns:  "what I'm hearing here is that he feels his only option is either me or represent himself."  Counsel suggested revisiting the court's ruling from the *Marsden* hearing because he and defendant had "reached a level of failure to communicate, [a] complete breakdown in communication."  The court agreed to hold another *Marsden* hearing later that afternoon.

5

At the second *Marsden* hearing, the trial court noted that defendant "made it abundantly clear that he does not want [appointed counsel] as his attorney," and asked if appointed counsel could "adequately represent [defendant] or is the relationship between you and your client irreparably harmed?" Appointed counsel responded, "I believe our relationship is irreparably harmed, specifically there is an absolute failure to follow any of my advice, an absolute unwillingness to consider any of my suggestions." The trial court granted defendant's request, relieved the public defender's office from representing defendant, and appointed a lawyer referral service to represent him.

The trial court then asked defendant, "I assume at this point you're going to be dropping the *Faretta* request; is that right?" Defendant replied, "Yes." The court noted that the private attorney who had represented defendant at the preliminary hearing would be a good choice, but the referral service would choose, not the court. Defendant agreed to postpone the preliminary hearing in the drug case in order to try to get the same private attorney appointed to represent him. The following week, the court appointed a different attorney, and shortly thereafter, the court appointed another attorney who handled the case through trial.

At trial, the jury found defendant guilty of all 10 offenses and found all the enhancement allegations true. At the sentencing hearing, defendant requested for the third time that the trial court replace his appointed counsel, asserting that his trial counsel had performed ineffectively by failing to call witnesses, failing to make certain objections to evidence, and failing to make a motion for a new trial. The court found that appointed counsel represented defendant effectively and denied defendant's motion. Defendant did not renew his request to represent himself during this third *Marsden* hearing or at any point following the court's replacement of the public defender after the second *Marsden* hearing.

The trial court found true the alleged aggravating circumstances and sentenced defendant to an aggregate term of 28 years to life in prison for the two counts of

attempted murder and arson of an inhabited structure and imposed but stayed the sentences for the remaining counts pursuant to section 654. Defendant timely appealed from the judgment.

## II. DISCUSSION

Defendant contends the trial court improperly denied his request to waive his right to the assistance of counsel and represent himself. The People argue the trial court did not err in considering defendant's request and that defendant withdrew his motion before the trial court ruled on it. We agree with the People. Specifically, we conclude: (1) defendant did not make an unequivocal request to waive his right to counsel; (2) the trial court did not err by trying to ensure defendant was aware of the dangers and disadvantages of self-representation; and (3) defendant withdrew his request before a ruling was made.

### A

### *Unequivocal Request*

" 'A criminal defendant has a right to represent himself at trial under the Sixth Amendment to the United States Constitution.' " (*People v. Stanley* (2006) 39 Cal.4th 913, 931.) But "in order to protect the fundamental constitutional right to counsel, one of the trial court's tasks when confronted with a motion for self-representation is to determine whether the defendant truly desires to represent himself or herself." (*People v. Marshall*, *supra*, 15 Cal.4th at p. 23.) Accordingly, " '[t]he *Faretta* right is forfeited unless the defendant " 'articulately and unmistakably' " demands to proceed in propria persona.' " (*People v. Boyce* (2014) 59 Cal.4th 672, 703.) "[A] rule requiring the defendant's request for self-representation to be unequivocal is necessary in order to protect the courts against clever defendants who attempt to build reversible error into the record by making an equivocal request for self-representation." (*Marshall*, at p. 22.) " '[A] [*Faretta*] motion made out of a temporary whim, or out of annoyance or frustration, is not unequivocal -- even if the defendant has said he or she seeks self-

representation.' " (*Stanley*, at p. 932.) "Because the court should draw every reasonable inference against waiver of the right to counsel, the defendant's conduct or words reflecting ambivalence about self-representation may support the court's decision to deny the defendant's motion." (*Marshall*, at p. 23.) Whether a defendant's request was unequivocal is a question of law we review without deference to the trial court's determination. (*People v. Dent* (2003) 30 Cal.4th 213, 218; *People v. Koontz* (2002) 27 Cal.4th 1041, 1070.)

We conclude defendant's request to represent himself was a response made in frustration to the trial court's denial of his request to replace his appointed counsel. Defendant made his request immediately after confirming that the court would not remove his appointed counsel, stating that he would not go forward with his appointed counsel. Requesting self-representation during a *Marsden* hearing "out of apparent annoyance or frustration with his first appointed counsel," suggests defendant did not "fully comprehend" what he would lose by waiving his right to counsel. (*People v. Stanley*, *supra*, 39 Cal.4th at pp. 932-933.) Each time defendant discussed self-representation, he made clear his motivation, for example stating: "I really don't want [appointed counsel] representing me, period. I [would] rather represent myself than let him represent me, period." Defendant's first appointed counsel noticed this, explaining, "what I'm hearing here is that he feels his only option is either me or represent himself." The trial court too noted at the second *Marsden* hearing that defendant "made it abundantly clear that he does not want [appointed counsel] as his attorney."

Defendant's consistent emphasis on replacing his counsel shows he was not making "an unequivocal request, but rather a spur of the moment decision prompted by the denial of [his] motion for substitute counsel." (*People v. Marshall*, *supra*, 15 Cal.4th at p. 21.) After the court replaced the public defender's office, defendant immediately dropped his request to represent himself and did not renew it again, despite having two other appointed attorneys and making a third motion to replace his counsel prior to

8

sentencing. This further supports the conclusion that defendant's request was not unequivocal. (*Id.* at p. 22 [defendant's failure to assert the right of self-representation at a later hearing indicates the request was an "impulsive response to the trial court's denial of his request for substitute counsel"].)

These circumstances all support the conclusion that defendant did not unequivocally seek to waive his right to counsel and represent himself. As a result, the trial court did not err by not granting the request.

B

*Defendant's Awareness of the Dangers and Disadvantages of Self-Representation*

Defendant also contends the trial court placed an improper condition upon his right to represent himself, by suggesting defendant try representing himself during the preliminary examination in a different, less serious case before waiving his right to counsel in this case. We disagree.

" 'When confronted with a request' for self-representation, 'a trial court must make the defendant "aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' " ' " (*People v. Stanley*, *supra*, 39 Cal.4th at p. 932.) "The scope of a trial court's inquiry into a defendant's ability to validly waive counsel 'depends on the particular facts and circumstances of the case.' " (*People v. Waldon* (2023) 14 Cal.5th 288, 308.)

For example, in *People v. Taylor* (2009) 47 Cal.4th 850, our Supreme Court upheld a waiver of the right to counsel when the trial court gave "extensive advice to defendant on the disadvantages of representation." (*Id.* at p. 878.) The defendant "did not simply reply to the court passively or monosyllabically," but asked questions, which led the court to reiterate some points and to "elaborate[] at length, after which defendant acknowledged: 'I understand clearly.' " (*Id.* at pp. 878-879.) Defense counsel had also cautioned defendant about the difficulty of "deciding whether to introduce mitigation

9

evidence with which he was emotionally involved, [to which] defendant responded: 'I think I can control that. I understand what you're saying, though.' " (*Id.* at p. 879.) Based on this "lengthy colloquy with defendant," the court concluded "defendant chose self-representation with his eyes open to the risks and disadvantages it entailed, the nature and seriousness of the charges he faced, and his right to continue being represented by appointed counsel throughout trial." (*Ibid.*)

On the other hand, in *People v. Waldon*, *supra*, 14 Cal.5th at page 288, our Supreme Court reversed a defendant's convictions, concluding the defendant had not knowingly and voluntarily waived his right to counsel. (*Id.* at pp. 309-310.) The reasons a defendant gave for wanting to represent himself, "offered no indication that he 'actually' appreciated the 'significance and consequences' of that decision," so the *Waldon* court criticized the trial judge for speaking "only briefly" to the defendant and giving only "standard advisements." (*Id.* at p. 309.) In response to those advisements, defendant's "only response was 'Yes, your Honor.' " (*Ibid.*) The trial court concluded, " 'There is no question in this [c]ourt's mind of the defendant's ability to read and write, listen, be polite, and cooperate if he chooses to do so,' " but the Supreme Court determined the trial court's "inquiry was 'plainly insufficient' to establish [the defendant]'s 'understanding of the dangers and disadvantages of self-representation' and his knowing and voluntary waiver of the right to the assistance of counsel." (*Ibid.*)

These precedents demonstrate that the trial court in this case acted appropriately by questioning defendant about his answers on the *Faretta* form and by remaining skeptical after hearing defendant's incomplete and unsophisticated answers. Contrary to defendant's argument that "[t]he 'heavy duty' nature of the case was of no relevance," the court "considered particular difficulties" defendant might face in this very complex case. (*People v. Waldon*, *supra*, 14 Cal.5th at p. 308.) The court would have erred by permitting defendant to waive his right to counsel without ensuring the defendant understood the dangers and disadvantages of trying to represent himself in this particular

10

case, meaning he must understand the difficulty of defending against 10 charges at once and handling extensive evidence, including expert testimony. The trial court properly delayed ruling on defendant's request when his answers were insufficient to show such understanding.[3]

## C

### *Withdrawal of Request*

Defendant also contends that his withdrawal of his request to waive his right to counsel, which immediately followed the trial court agreeing to defendant's request to replace his appointed counsel, did not affect his request. Again, we disagree.

"Of course, a defendant may withdraw his *Faretta* motion before a ruling is made." (*People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 1002.) A defendant can also abandon his request to represent himself by his "subsequent acceptance of several appointed counsel to represent him without ever renewing his request for self-representation." (*People v. Stanley*, *supra*, 39 Cal.4th at p. 933.)

Here, the trial court never ruled on defendant's request to represent himself. Instead, after granting defendant's desired relief and replacing his appointed counsel, the court asked, "I assume at this point you're going to be dropping the *Faretta* request; is that right?" Defendant simply replied, "Yes." Likewise, defendant demonstrated he abandoned the request by subsequently accepting two different appointed counsel without

---

[3] Defendant characterizes the trial court's suggestion that defendant waive his right to counsel for the preliminary examination in the separate drug case so that he could demonstrate his understanding of the dangers and disadvantages of self-representation as an "impermissible condition" impinging upon his right of self-representation. The record does not support this contention. The trial court suggested defendant try representing himself at the preliminary examination in the other case but allowed defendant to decide whether to do so or not. We need not consider whether such a waiver would have been error because defendant did not make such a waiver, the prosecution dismissed the other case before the preliminary examination, and that case is not before us in this appeal.

ever renewing his request for self-representation.  Defendant even asked the court to replace his appointed counsel a third time and, when the court denied the request, did not renew his request for self-representation.  The court did not err by failing to grant defendant's request to represent himself after he explicitly withdrew the request and then abandoned the request for the rest of the proceedings.

## III.  DISPOSITION

The judgment is affirmed.

/s/
WISEMAN, J.*

We concur:

/s/
KRAUSE, Acting P. J.

/s/
BOULWARE EURIE, J.

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.